COULTER, INC., a Wyoming corporation, Appellant (Defendant),

v.

Dale ALLEN, d/b/a Rocky Mountain Concrete, Appellee (Plaintiff).

No. 5396.

Supreme Court of Wyoming.

March 13, 1981.

Dwight F. Hurich of Hawkey, Sowada & Hurich, Gillette, signed the brief and appeared in oral argument on behalf of appellant.

There was no appearance on behalf of appellee.

Before ROSE, C. J., and McCLINTOCK, RAPER, THOMAS and ROONEY, JJ.

ROONEY, Justice.

Appellant-defendant appeals from a judgment rendered on a jury verdict which awarded appellee-plaintiff $6,595.54 damages for breach of contract.

Appellant words the issues on appeal as follows:

"I. DID THE TRIAL COURT ERR BY ADMITTING EVIDENCE OF AN OFFER TO COMPROMISE AND STATEMENTS MADE IN COMPROMISE NEGOTIATIONS?

"II. WAS THE AWARD OF DAMAGES TO APPELLEE AN ERROR AS A MATTER OF LAW BECAUSE THERE WAS NO EVIDENCE TO SUBSTANTIATE THE FINDING?

"III. DID THE TRIAL COURT ERR IN GIVING THE JURY THE INSTRUCTION ON PLAINTIFF'S DAMAGES AS IT DEMONSTRATES THE TRIAL COURT DISREGARDED THE OFFERED LIEN RELEASES?"

We reverse and remand the case for a new trial.

Appellant and appellee entered into an agreement by which appellee was to perform certain concrete construction work on appellant's real estate development projects in Campbell County. Two "job work orders" were introduced into evidence and accepted by the parties as setting forth at least some of the terms of the agreement. Appellee testified on cross-examination:

"Q. And would you agree that those were your contract with Coulter, Inc.?

"A. Yes, along with the verbal contract[1] we had, this is the contract. It's even

---

1. A great deal of evidence was received concerning the terms of the "verbal contract," and the issue relative to the parol evidence rule was not raised.

marked up here 'contract' in a little square.

"Q. And this contains all of the important parts of your contract; doesn't it?

"A. Well, it pertains to most of the important parts, yes.

\* \* \* \* \* \*

"Q. (By Mr. Walker) You put contracts in writing so that there'll be no misunderstanding; don't you?

"A. Yes.

"Q. And you put in writing what the important parts of the contract are; don't you?

"A. Yes."

The work orders were on preprinted forms, reflecting the work to have been ordered by Milt Coulter. They were signed by appellee. Instead of setting forth the contract amount in the sections of the form provided for doing so, "(as per certified amount)" was typed in. Appellee was designated as the contractor. One of the forms was dated August 27, 1979 for "PARKSIDE APARTMENTS" job and was to be billed to Coulter, Inc. The following was typed under the heading "DESCRIPTION OF WORK":

"Pour and finish all remaining curbs, sidewalks and Trash enclosure for Parkside Apartments at the following prices:

"$3.00 per running foot for all curbs.

".45 per sq. foot for all sidewalks.

"$100.00 per each trash enclosure.

"Coulter, Inc. will pay for all concrete.

"Will be pay [sic] on a weekly basis for work done the previous week."

The other form was dated September 17, 1979 for "Fox Park Subdivision" job and was to be billed to Fox Park Development.[2] The following was typed under "DESCRIPTION OF WORK":

"Pour and finish street repair for $.45 per sq. ft.—Fox Park will furnish concrete.

"Will be paid on a weekly basis for work done the previous week."

Payment for the work was made weekly. Each time, appellee signed a "CERTIFICATE FOR PAYMENT" which included the following:

"In consideration of the payment of the amount of this certificate/request for payment the undersigned does hereby release any and all claims and/or rights arising under or by virtue of the contract/agreement, waives any and all rights of lien and certifies that all subcontractors, material suppliers and labor have been paid in full for material, services and/or labor arising under or by virtue of the contract/agreement."

In mid-October, a disagreement developed between appellant and appellee, and the contractual relationship was terminated. Appellee then presented a claim to appellant for work which he contended was performed but for which he was not paid. If not all, most of this work was performed during the periods for which appellee had signed a "CERTIFICATE FOR PAYMENT."

Before trial, appellant's motion in limine was denied. The motion was to prohibit the introduction into evidence of two letters. One was a letter dated November 30, 1979 from appellee's attorney to appellant advising of a claim for $5,508.15 and stating in part:

"I am advising you of this claim as a courtesy before suit is filed. If you are interested in negotiating or in paying the account, contact me at your earliest convenience. \* \* \* \*"

The other letter was a one-page letter with a two-page enclosure. It was dated December 10, 1979 from Deb Bricker, the Assistant Secretary/Treasurer of appellant to appellee's attorney. It was in response to the November 30, 1979 letter from such attorney. It reads in pertinent part:

"Please find enclosed sheets explaining the payments and the overages incurred while Rocky Mountain Concrete was doing contract labor for us. These sheets

---

**2.** Appellant made some initial objections to evidence on the basis that it pertained to Fox Park Development and not to a party to the lawsuit, but the case went to the jury on instructions which did not consider the distinction.

certainly are not complete by any standard; but hopefully it will help give you an idea of the promblems [sic] we had with Dale. It would have taken me a solid month to type the whole story. "Please call me when you finish going over the breakdowns and I can explain any part that I didn't make clear.

\* \* \* \* \* \*

" \* \* \* I am sure Dale Allen cost me way more then [sic] he was ever worth. I would like to settle this out of court, but if Dale insists on not accepting our settlement, I will get the rest of my bills together.

"I appreciate you taking time to hear my side of the story and I hope we can work some arrangement out."

· The two enclosed sheets (hereinafter referred to as enclosures) contained figures on amounts billed and paid to appellee on the two projects. They concluded with the following:

"With this amount of $1,225.73 less the amount he owes Fox Park, I am willing to settle with Dale for $576.93. I have already offered him this amount and explained all the overages, but he would not accept this amount."

At trial, appellee offered the enclosures in evidence. They were admitted over objection that they were part of the settlement negotiations and were only part of an entire letter. Thereafter, appellant offered the December 10, 1979 cover letter into evidence, and it was admitted without objection.

 We are here concerned only with the possibility of error in the admission of the enclosures. The November 30, 1979 letter was not offered or received into evidence. It was before the court during the motion in limine and was pertinent to the decision of the court relative thereto. The December 10, 1979 cover letter had similar pertinency, but appellant cannot predicate error on its admission at his own behest and without objection by appellee.[3]

 Rule 408, W.R.E. provides:

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

The language of the enclosures to the effect that appellant would like to "settle this out of court" and "I hope we can work some arrangement out" together with figures explaining payments and overages which "are not complete by any standard" must be taken to be statements made in compromise negotiations in attempting to settle a claim, both as to validity and amount. Rule 408 is founded on public policy to encourage out of court settlements and is in the nature of a privilege. Advisory Committee's Note to Rule 408, Federal Rules of Evidence;[4] Wright & Graham, Federal Practice and Procedure: Evidence

---

**3.** The possibility that appellant waived a position or estopped itself with reference to a complaint about the propriety of introducing the enclosures into evidence by introducing the December 10, 1979 cover letter was not raised on this appeal, and we will not address ourselves to it. We note that appellee could not have objected to introduction of the December 10, 1979 cover letter, inasmuch as one may prove the contents of the remainder of a writing or agreement if his adversary has been permitted to introduce a part thereof. See 29 Am.Jur.2d

Evidence § 839; 31A C.J.S.Evidence § 190; 32 C.J.S.Evidence § 705; *Bosler v. Coble,* 14 Wyo. 423, 84 P. 895 (1906).

**4.** Rule 408, W.R.E. was adopted from Rule 408, Federal Rules of Evidence and is copied verbatim except that the sentence: "This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations," was omitted as superfluous.

§ 5302; Weinstein's Evidence ¶ 408[02]. The common-law rule relative thereto was enlarged to preclude the introduction of "evidence of 'conduct or statements made in compromise negotiations.'" Wright & Graham, supra, § 5307; Weinstein's Evidence ¶ 408[01].

A controversy certainly existed between the parties as to the amount owed, if any, by appellant to appellee and as to the liability, if any, owed by appellant to appellee. Appellee did not purport to offer the exhibits for any purpose other than to establish the amount of damages. At the argument on the motion in limine, appellee was asked by the court why he wanted the material in evidence. Appellee's answer was that the statements on how much was claimed, on how much he was not paid, that "they say they don't owe him all this money," that "this is why we don't pay it to you" are "very relevant as far as damages that Mr. Allen has suffered." The evidence was of "conduct or statements made in compromise negotiations," "to prove liability for or invalidity of the claim *or its amount.*" The evidence was exactly that prohibited by Rule 408, W.R.E. It was error to deny the motion in limine and to admit the enclosures into evidence.

> "The failure to exclude, upon proper and timely objection, evidence of an offer or a completed agreement has generally been held to be sufficiently prejudicial to warrant a mistrial, even if there has been an admonition. With the expansion of Rule 408's exclusionary treatment to cover all conduct and statements during compromise negotiations, every erroneous admission of evidence will not have the same prejudicial effect. * * *" Weinstein's Evidence ¶ 408[06], p. 408–29.

The enclosures contained a number of computations which could have been used by the jury in arriving at the damage figure. Other evidence was sketchy with reference to specific figures. Appellee testified that he "figured" that he was owed $1,013.45 on the Fox Park project, $3,178.00 for extra work and $11,306.00 for lost profits. The exact method by which these figures were computed was not in evidence, except that the $2,690.80 figure resulted from 45¢ per square foot billed less money paid on that project.

Inasmuch as the probability is great that the jury used some of the figures, computations and comments concerning liability from the enclosures in arriving at the verdict, we reverse the judgment and remand for a new trial.

Accordingly, we will not address the second issue presented to us on this appeal relative to damages. However, inasmuch as the third issue concerning the lien waivers and releases will again be an issue in a new trial, we comment briefly upon it. *Chicago & N. W. Ry. Co. v. City of Riverton, Fremont County,* 70 Wyo. 119, 247 P.2d 660 (1952); *Bartlett v. State,* Wyo., 569 P.2d 1235 (1977); and *Goodman v. State,* Wyo., 573 P.2d 400 (1977).

Appellant objected to the following instruction given by the court:

> "A release is in itself a contract whereby one party, for something of value known as 'consideration,' gives up some right or claim he has against another. Whether there was a release of any obligation in this case is a question of fact for you to determine."

A release is contractual in nature, and it has been held to be a contract or a species of contract. 76 C.J.S. Release § 1. There is no question but that release clauses were contained in the "CERTIFICATE FOR PAYMENT." The instruction which charged the jury with a determination as to whether there "was a release of any obligation" was too broad. The determination is not as simple as there expressed.

In *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463, 465 (1980), we said:

> "Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. [Citations.] If the contract is in writing and the language is clear and unambiguous, the intention is to be se-

cured from the words of the contract. [Citations.] And the contract as a whole should be considered, with each part being read in light of all other parts. [Citations.] The interpretation and construction is done by the court as a matter of law. [Citations.]

"If the contract is ambiguous, resort may be had to extrinsic evidence. [Citations.] An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.' [Citation.] Ambiguity justifying extraneous evidence is not generated by the subsequent disagreement of the parties concerning its meaning. [Citation.]

" * * * Whether ambiguity exists is a question of law. * * * "

See *Natrona Power Co. v. Clark,* 31 Wyo. 284, 225 P. 586 (1924); and *Harris v. Grizzle,* Wyo., 599 P.2d 580 (1979) for instances in which releases were construed as a matter of law.

"Generally the construction and legal effect of an ambiguous contract are questions of law, although where its meaning depends on extrinsic evidence *which is in material conflict,* or capable of more than one inference, a question of fact as well is presented." (Emphasis supplied.) 17A C.J.S. Contracts § 617.

The language of the release clauses in the "CERTIFICATE FOR PAYMENT" is clear and unambiguous. "[A]ny and all claims and/or rights arising under or by virtue of the contract/agreement" are released for the period of time covered by the certificate. The jury should have been so instructed, or, at least, it should not have been instructed that it was to determine if "there was a release of any obligation in this case."

Whether or not there was another contract between the parties and whether there was a modification of the written contracts in evidence are other issues which may effect the scope of the release, and, with conflicting evidence thereon, be an issue of fact for the jury. There were releases of obligations in this case; the scope thereof is dependent upon the evidence.

Reversed and remanded for a new trial.

THOMAS, Justice, specially concurring.

I concur in all that is said in the majority opinion of this court except for the first sentence of footnote 3. As I understood that particular language, it leaves open a question which, according to my interpretation, the majority opinion has resolved. I hasten to add that it is resolved correctly.

In my opinion, in at least some situations an adversary in a trial contest, must be permitted to follow a procedure described in the title to § 57, Ch. 6, McCormick on Evidence (West Publishing Company 1954) as "fighting fire with fire." In such an instance, when inadmissible evidence has been admitted which is relevant and for that reason probably damaging to the adversary's case, or though irrelevant is likely to arouse prejudice to a material degree, the adversary having objected seasonally should be entitled to give answering evidence as a matter of right. He should not be foreclosed from assigning error on appeal if he does exactly that and still loses in the trial court. If this were not the rule he would be required to preserve his point on appeal at the cost of essentially abandoning his prospect of winning the lawsuit at the first opportunity. I know that there does exist an opposite view, but the approach of fighting fire with fire has found favor in several courts. *United States v. DeCarlo,* 458 F.2d 358, 372, n.1 (3rd Cir. 1972) (dissenting opinion), cert. denied 409 U.S. 843, 93 S.Ct. 107, 34 L.Ed.2d 83; *United States v. Konovsky,* 202 F.2d 721, 727 (7th Cir. 1953); and *Salt Lake City v. Smith,* 104 F. 457, 471 (8th Cir. 1900). Cf., *United States v. Meneses-Davila,* 580 F.2d 888 (5th Cir. 1978).

In the instant case the majority opinion permits the appellant to urge as error a

ruling permitting the introduction of evidence which should not have been admitted, and grants the appellant relief on this point even though the appellant introduced, in response, evidence of a similar nature designed to explain the earlier inadmissible evidence. This proposition is inherent in the ratio decidendi of this case. It is a correct resolution of the matter, and the position of this court should not be eroded by the footnote language.