**CITY OF GREEN RIVER, Wyoming, a Wyoming Municipal Corporation, Appellant (Defendant),**

**v.**

**DEBERNARDI CONSTRUCTION CO., INC., Appellee (Plaintiff).**

**No. 91–26.**

Supreme Court of Wyoming.

Sept. 10, 1991.

Ford T. Bussart of Greenhalgh, Bussart, West & West, Rock Springs, for appellant.

John T. Pappas of Western Law Associates, P.C., Lander, for appellee.

Before THOMAS, CARDINE, MACY and GOLDEN, JJ., and BROWN, Ret. J.

BROWN, Justice, Retired.

Appellant City of Green River (Green River) appeals the trial court's determination that its preference policy is in contravention of public policy and Wyoming law.

The issues stated by Green River are:

Is a policy enacted by the governing body of a City which lets a contract to a responsible, certified resident of the City making the lowest bid if the certified resident's bid is not more than ten percent (10%) higher than that of the lowest responsible nonresident bidder violative of § 16–6–102, W.S.1977?

Is such a local preference violative of any provisions of either the Wyoming Constitution or the United States Constitution?

Is the City of Green River's preference policy defective because it was not implemented by ordinance?

Appellee submits an additional issue for consideration:

Was the Davis Construction bid rendered invalid by the inclusion of a change-order provision in the event of adverse site conditions?

We affirm.

On August 23 and 30, 1990, Green River published Notice to Bidders calling for proposals for the installation of a water main and appurtenances. The project was to be funded by the Sweetwater County Joint Powers Board. The notice provided that a five percent preference would be given to Wyoming contractors in accordance with W.S. 16–6–102 (July 1990 Repl.). No mention was made of any additional preference.

All funds to be expended by the Joint Powers Board for labor, equipment and materials on the project were to be generated exclusively and directly by imposition of fees upon users of the water distribution system in Green River. Incorporated into the user rate paid by each consumer of water within Green River is a fee which is collected by Green River and remitted to the Joint Powers Board for deposit into a capital improvements fund. That fund is segregated, to be drawn upon by Green River for capital improvements to the distribution system which Green River leases from the Joint Powers Board. When the project involved here was scheduled, the governing body of Green River requested from the Joint Powers Board a drawdown from the City's capital improvements fund. No monies attributed to any other source were to be expended on this project. At the time of submitting its bid, appellee, DeBernardi Construction Company of Rock Springs (DeBernardi), had neither a place of business in Green River nor a city busi-

ness license, as required by the purchasing policy for those seeking preference.

Bids were submitted by DeBernardi in the amount of $32,665 and Davis Construction of Green River (Davis) in the amount of $35,773. On September 4, 1990, Davis, although the higher bidder, was declared the successful bidder due to a ten percent preference in favor of Green River businesses which had been adopted as a part of Green River's purchasing policy. This was reflected by the minutes of a meeting of the Green River governing body on July 19, 1988.

On September 13, 1990, DeBernardi filed a complaint against Green River and Davis alleging that Davis' bid contained patent flaws rendering it invalid and that the bid was awarded in contravention of statute. DeBernardi requested injunctive relief in the form of a temporary restraining order and preliminary injunction. DeBernardi claimed that it would suffer immediate and irreparable harm if Davis were permitted to proceed, that it had no adequate remedy at law, and that the harm outweighed any loss to Davis. DeBernardi additionally sought a declaratory judgment directing Green River to award the project to it as provided by Wyoming law and to declare Green River's ten percent local preference invalid as it was contrary to Wyoming law and the due process and equal protection provisions of the Wyoming and United States Constitutions, and it was against public policy. A motion for temporary restraining order was granted on September 13, and the motion for preliminary injunction was set for hearing.

On October 2, 1990, a preliminary injunction was granted and Green River was enjoined from either awarding a contract for the project or entering into a contractu-al relationship with Davis. The district court, in a letter opinion dated November 1, 1990, stated that the bidding preference policy of Green River violated Wyoming public policy and law according to W.S. 16–6–102. The court subsequently granted a declaratory judgment on November 30, 1990. This appeal followed.

In its letter opinion, the trial court identified five issues.[1] However, the court stated that the issues could be narrowed and the case decided with reference to two issues:

I. Is Green River's 10% preference violative of Wyoming law and public policy as expressed in W.S. § 16–6–102 (1979) [sic]?

II. Was Davis' bid rendered invalid by inclusion of a change-order provision in the event of adverse site conditions?

The statute provides in part:

(a) If a contract is let by the state, any department thereof, or *any* county, *city*, town, school district, community college district *or other public corporation of the state* for the erection, construction, alteration or repair of any public building, or other public structure, or for making any addition thereto, or *for any public work or improvements*, the contract shall be let, if advertisement for bids is not required, to a resident of the state. *If advertisement for bids is required the contract shall be let to the responsible certified resident making the lowest bid if the certified resident's bid is not more than five percent (5%) higher than that of the lowest responsible nonresident bidder.*

W.S. 16–6–102 (emphasis added).

The trial court's comprehensive and well-reasoned opinion letter stated in part:

1. The five issues were:
   I. Was Green River required to enact its policy by ordinance rather than minute action?
   II. Did Green River's failure to publish notice of its 10% preference constitute a denial of due process and equal protection under the Wyoming Constitution?
   III. Was Davis' bid rendered invalid by inclusion of a change-order provision in the event of adverse site conditions?
   IV. Is Green River's preference policy violative of the Privileges and Immunities, Equal Protection or Commerce Clauses of the United States Constitution?
   V. Is Green River's 10% preference violative of public policy, despite the fact that all funds for the project were solely those of Green River?

A straightforward reading of W.S. § 16–6–102 (1979) [sic], Wyoming's statutory provision pertaining to resident preferences, clearly demonstrates that the State never contemplated City preference policies as adopted by Green River. In fact, the language of the statute clearly indicates the State's intent to bring the actions of municipal corporations within its purview.

\* \* \* \* \* \*

The constitutionality of § 16–6–102 was first raised in 1963 in an Opinion of the Wyoming Attorney General, (49 Op. Att'y Gen. 236 (1963)), and resolved in *Galesburg Construction Company, Inc. of Wyoming v. Board of Trustees of Memorial Hospital of Converse County*, 641 P.2d 745 (Wyo.1982).

The Wyoming Supreme Court reasoned that "[b]y giving Wyoming corporations a handicap in bidding on public contracts, the statute in essence increases the likelihood that a Wyoming corporation will be awarded the contract. When contracts are awarded to Wyoming corporations, as opposed to out-of-state corporations, local industry is encouraged. This ... strengthens ... the state *and local* economy—the *primary interest is that of the public.* \* \* \* The money payable under the contract is more likely to remain within the state, and enhance the tax base of *state and local government." Id.* at 750 [Emphasis added].

The statute leaves no doubt that the legislature intended to embrace local government in its preference scheme, and *Galesburg* substantiates the notion that the legislation was written in the public interest and not for proprietary convenience. It is difficult to see how Green River's preference policy can be reconciled with a statute which has already conferred the benefit on municipalities and set the preference at a percentage deemed reasonable. It is also difficult to understand how Green River can claim that its preference is purely proprietary. W.S. § 16–6–102 was clearly referred to in *Galesburg* as a general law promoting the public's interest in a strong state economy.

\* \* \* \* \* \*

Since an activity of a municipality is presumed to be governmental rather than proprietary (*Savage v. Town of Lander*, 309 P.2d 152, 154 (Wyo.1957)), and since *Galesburg* explained that legislating in the area of economic preference was governmental rather than proprietary, it is fair to say that Green River was attempting to create law in an area already preempted by the state legislature.

Municipal corporations, unlike the state, have no sovereignty. They are creatures of the state, and have only such powers as have been granted to them by the state. *KN Energy, Inc. v. City of Casper*, 755 P.2d 207, 210 (Wyo. 1988); *Retail Clerks Local 187 AFL–CIO v. University of Wyoming*, 531 P.2d 884, 887 (Wyo.1975); *State v. Kingham*, 420 P.2d 254, 257 (Wyo.1966); *Smith v. City of Casper*, 419 P.2d 704, 706 (Wyo. 1966). Municipalities may exercise only such powers as are expressly or impliedly conferred by the state. Implied powers are limited to those necessarily arising and reasonably inferred from expressly granted powers, and those *essential* to give effect to expressly granted powers. A municipal corporation *cannot* enlarge or extend powers expressly granted. *Coulter v. City of Rawlins*, 662 P.2d 888, 894–895 (Wyo.1983).

\* \* \* \* \* \*

Green River's preference policy clearly conflicts with W.S. § 16–6–102 as it stands, and consequently it must be stricken as municipal legislation in contravention of the objectives of a valid state law. "Legislation by cities and towns must not conflict with statutes uniformly applicable to cities and towns, and it must be subordinate and subservient to such statutes. Each enactment must be measured in its own right to determine if it pertains to a 'local affair' and if it is 'subject to' statutes uniformly applicable." *Laramie Citizens for Good*

*Government v. City of Laramie,* 617 P.2d 474, 483 (Wyo.1980).

Succinctly, the trial court held that W.S. 16–6–102 preempted the field of residential preference and Green River's attempt to legislate in the area of residential preference conflicted with legislation uniformly applicable to cities and towns.[2] We agree with that determination.

Cases are legion considering whether or not federal statutes have preempted a field to the exclusion of state legislation. There are also numerous cases concerning the question whether state statutes have preempted a field to the exclusion of municipal action. Most of the state/municipal cases involved police powers. In making a determination that the state has preempted a field of regulation which the city seeks to enter, we look to certain guidelines. In the following case, four guidelines were set out:

First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is preempted.

Second, preemption of a field of regulation may be implied upon an examination of legislative history.

Third, the pervasiveness of the state regulatory scheme may support a finding of preemption. * * *

Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.

*People v. Llewellyn,* 401 Mich. 314, 257 N.W.2d 902, 905 (1977) (citations omitted). For another list of guidelines, *see Northern States Power Company v. State of Minnesota,* 447 F.2d 1143 (8th Cir.1971).

W.S. 16–6–102 does not provide expressly that the field of residential preference is preempted by that statute, nor is there legislative history to give us guidance. We look therefore, to the other two guidelines

considered in *Llewellyn.* The comprehensive nature of W.S. 16–6–102 is self-evident. It includes "the state, any department thereof, or any county, city, town, school district, community college district, or other public corporation of the state." The list of entities contained in the statute is broad, detailed and appears to be all inclusive.

If Wyoming's 23 counties, 96 municipalities, community college districts, school districts and other public corporations were free to establish their own economic preference scheme, a great deal of uncertainty and confusion would result.

In its letter opinion, the district court explained the ramifications of governmental entities setting their own economic preference scheme:

Green River argues that its preference policy is within the delegated powers and sound discretion of the city, regardless of W.S. § 16–6–102. But it is not difficult to see how the application of such a policy could bring about absurd results. From a public policy standpoint, a situation could be created in which cities throughout the state were setting widely varying preference percentages and attempting to enforce them against neighboring cities and other residents of their own counties. This would do little for a municipality's economic stability, but much to create increased confusion, rivalry and litigiousness in the business community. Certainly, such a result was not the intent of the legislature.

We agree with the district court.

Green River directs our attention to several statutes which it contends grant it the power to enact its local preference. With regard to these statutes, the trial court in its opinion letter said:

It [Green River] claims that W.S. § 15–1–113, Contracts for Public Improvements, grants municipal bodies sole discretion to set the criteria by which they will award contracts to bidders. § 15–1–113 covers

---

2. Green River's ten percent residential preference policy was adopted as part of its purchasing policy as reflected by its minutes of a meeting July 19, 1988. We do not wish to elevate this suspect legislation to the status of an ordinance; however, we are not aware of cases discussing the effect of a minute entry as a substitute for an ordinance.

topics including necessity for advertisement of bid, notice requirements, bond requirements, and procedure in cases of malfeasance. It mentions "sole discretion" only once, stating that the lowest responsible bidder will be determined at the sole discretion of the governing body. The statute is by no means a general grant of power, but is narrowly tailored to set procedural standards. The statute does not enable the municipality to alter the status of the lowest responsible bidder by burdening him with additional impediments not contemplated by the legislature; it seems only to empower the municipality to reject bids for numerous unstated yet commonly understood reasons, including failure to conform to specifications, questionable quality of goods or services, or unacceptable terms.

Green River also cites W.S. § 15–1–103(a)( [xli] ), which states that governing bodies of cities and towns may adopt ordinances, resolutions and regulations necessary to give effect to the powers conferred on them by statute. Green River claims that W.S. § 15–7–101(a)(iii) empowers it to "[t]ake any action necessary to establish, purchase, maintain and regulate a water system for supplying water to its inhabitants * * *."

Defendants seem to stretch the language of cited statutes well beyond intended meaning. When read for plain meaning, none of the cited passages either expressly or impliedly entitle Green River to indulge in carte blanche legislation. § 15–1–103(a)(xli) states that municipal corporations may make laws *necessary* to give effect to powers conferred on them by statute, and W.S. § 15–7–101(a)(iii) empowers municipalities to take action *necessary* to maintain water systems. Green River has not shown an independent necessity for its 10% preference which adds anything to the state's rationale for its 5% preference, and the state preference distinctly incorporates the necessities of municipal corporations.

Green River cites several cases in support of the idea that public entities may discriminate against nonresidents when dealing with its own property. Most of the cases cited involve *state* preference policies. In a case cited by Green River, the city ordinance required prior approval of the State Treasurer, which it had received. The Court there stated that the facts of the case made it difficult to distinguish between state and municipal action. *United Building and Construction Trades Council of Camden County and Vicinity v. Mayor and Council of the City of Camden*, 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984). The city ordinance in *Camden* is vastly different from Green River's feeble attempt to provide for a residential preference and we have no problem distinguishing it.

One case cited by Green River upheld a city preference policy. *White v. Massachusetts Council of Construction Employers, Inc.*, 460 U.S. 204, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983). The case was decided under the commerce clause. The Supreme Court found no violation of the commerce clause in Boston's executive order that 50 percent of the work force on city-funded construction projects must be city residents and made its decision based on the market participant/market regulator distinction.

None of the cases cited by Green River are directly on point; therefore, we are not persuaded that their rationale should influence our determination in this case.

The trial court's determination that Green River's ten percent residential preference policy violates Wyoming law and public policy as expressed in W.S. 16–6–102 is

Affirmed.