CITY OF CHEYENNE, Appellant (Defendant),

v.

REIMAN CORP., Appellee (Plaintiff).

No. 93–20.

Supreme Court of Wyoming.

Feb. 11, 1994.

Jack Gage, and S. Gregory Thomas, City Attorney's Office, City of Cheyenne, for appellant.

E. James Burke, Burke, Woodard & Bishop, P.C., Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The issue as posed by the parties is whether a construction company that has submitted a bid to a city for the construction of a fire station should be entitled to rescind its bid without penalty because of a mistake in computing the amount of the bid. The trial court, by applying Colorado law, ruled the construction company would be entitled to rescind without incurring any penalty under the circumstances of this case. We hold the trial court erred in failing to strictly apply WYO.STAT. § 15–1–113 (1992). We affirm the summary judgment entered in favor of the contractor, however, because these parties are bound by the settlement agreement, which affords finality to the judgment of the district court without regard to whether it is legally correct. The contractor is entitled to the additional amount awarded by the trial court.

The appellant, City of Cheyenne (City), states the issue to be:

Whether the district court erred as a matter of law by granting summary judgment to Reiman.

The appellee, Reiman Corporation (Reiman), articulates the question with five sub-issues:

I. Is the low bidder on a municipal construction project entitled to rescind its mistaken bid after bid opening without penalty if:

A. The error was of a clerical nature, made without gross negligence;

B. The contractor promptly notified the city of the error;

C. The error is significant;

D. The city has taken no action in reliance upon the bid prior to being notified of the error;

E. The allowance of rescission will work no substantial hardship on the city.

This case is before the court for the second time, and the material facts may be gleaned from the earlier opinion in *Reiman Corp. v. City of Cheyenne*, 838 P.2d 1182 (Wyo.1992). Reiman mistakenly failed to include five items in computing the bid it submitted to the City for construction of a fire station. These items aggregated $71,000. Upon discovering the mistake, Reiman asked to withdraw its bid, which had been opened, without forfeiture of its bid bond, and requested the contract be awarded to the next lowest bidder. The City decided to accept Reiman's bid and issued a notice of award to Reiman because its bid was the lowest one submitted. Subsequently, the City amended the notice of award to extend Reiman's time for execution of the contract to December 26, 1990. Reiman was told, if it failed to execute the contract by that date, its bid bond would be forfeited.

Reiman then filed a declaratory judgment action in which it requested it either be allowed to rescind the bid or to reform the bid to include the $71,000 omitted by mistake. In addition, Reiman requested injunctive relief to prevent the City from forfeiting the bid bond or, alternatively, to excuse Reiman from the execution of the contract. Reiman's motion for injunctive relief was set for hearing on December 20, 1990 but, on that day, Reiman entered into an agreement with the City relating to the litigation. The agreement provided Reiman would withdraw its motion for a preliminary injunction; Rei-

man would sign the contract; and Reiman would proceed with construction of the fire station. With respect to the issue in this particular case, the agreement provided:

c. Reiman will execute the contract presented by the City and will perform the work specified in the contract. The price Reiman Corp. will be paid for the work will be either the original bid price of $1,910,-000.00 or the amended bid price of $1,981,-000.00 or such other price as the parties agree upon in writing.

d. If the parties cannot agree in writing as to a contract price, **the price shall be determined as set forth in this Agreement based upon the decision of the District Court in the action currently pending in Laramie County District Court.**

e. Although this Agreement will be binding between the parties, such litigation shall be determined without reference to this Agreement, i.e., the parties agree that this Agreement shall not be relevant evidence in determining whether Reiman was entitled to rescind its bid.

f. **If Reiman prevails, and the District Court finds that Reiman is entitled to rescind its bid, Reiman shall be entitled to a contract price of $1,981,000.00.**

g. If the City of Cheyenne prevails in such litigation, and the District Court finds that Reiman is not entitled to rescind its bid, the City shall be entitled to a contract price as stated in Reiman's original bid, $1,910,000.00. (Emphasis added.)

On October 7, 1991, the City filed a motion for summary judgment. Ten days later, Reiman filed its cross-motion for summary judgment. After a hearing, the district court dismissed Reiman's request to rescind its bid asserting an absence of jurisdiction, and the court granted the summary judgment motion of the City with respect to the reformation claim. The trial court found the December 20, 1990 agreement entered into by Reiman and the City rendered the rescission issue moot, and reformation was available only upon a mutual mistake by the parties.

Reiman appealed the dismissal of its rescission claim by the district court. This court reversed and remanded the case to the

district court "for a declaration as to whether a public bid may be withdrawn/rescinded, under the circumstances of this case, without forfeiture of the bid bond." *Reiman*, 838 P.2d at 1188.

When the district court considered the case on remand, it granted summary judgment to Reiman on its claim for rescission and awarded the disputed $71,000 to Reiman for a total contract price of $1,981,000. The district court adopted the criteria articulated in *Powder Horn Constructors, Inc. v. City of Florence*, 754 P.2d 356 (Colo.1988). It ruled:

> In Wyoming, a bidder is entitled to rescission of its mistaken bid if: (1) the mistake is of a clerical or mathematical nature, (2) the mistake was made in good faith, (3) the mistake was made without gross negligence, (4) the mistake relates to a material aspect of the bid, and (5) the public authority did not rely to its detriment on the mistaken bid prior to the letting of the contract.

The district court found that, in accordance with the criteria, Reiman had made a clerical error, in good faith, without gross negligence, with respect to a material aspect of its bid, and the City did not rely to its detriment on the mistaken bid prior to the letting of the contract. The City then took this appeal.

We hold the determination of the trial court with respect to the right to rescind the bid is clearly erroneous. The resolution is controlled by WYO.STAT. § 15–1–113 (1992). The pertinent provisions of that statute state:

> (c) **The contract shall be let to the lowest bidder who shall be determined qualified and responsible in the sole discretion of the governing body.** The governing body may reject all bids submitted if it finds that none of them would serve the public interest.

*　　*　　*　　*　　*　　*

> (f) In advertising for any bid, the forms of guarantee required under this section and approved by the city or town shall be specified. In addition, bidders shall be required to accompany each bid with a bid bond or if the bid is one hundred thousand dollars ($100,000.00) or less, any other form of bid guarantee approved by the city

or town, equal to at least five percent (5%) of the total bid amount, with sufficient surety and payable to the city or town. **The bid guarantee shall be forfeited as liquidated damages if the bidder, upon the letting of the contract to him, fails to enter into the contract within thirty (30) days after it is presented to him for that purpose or fails to proceed with the performance of the contract.** * * * All bids shall be numbered consecutively before they are opened and no further bids may be received after the advertised time of opening bids and any bid is publicly opened. * * * No bid may be considered unless accompanied by a bid guarantee in the required amount.

*　　*　　*　　*　　*　　*

> (*o*) **Any contract made in violation of the provisions of this section is void,** and any money paid on account of the contract by the city or town may be recovered without restitution of the property or benefits received or retained. (Emphasis added.)

For some forty years, this court has espoused and followed, frequently, the rule that we do not resort to rules of statutory construction and interpretation when the language of a statute is plain and unambiguous. *E.g., Thunder Basin Coal Co. v. Study*, No. 93–45, 1994 WL 2811 (Wyo. Jan. 7, 1994); *Wyoming State Tax Comm'n v. BHP Petroleum Co., Inc.*, 856 P.2d 428 (Wyo.1993); *Jackson State Bank v. King*, 844 P.2d 1093 (Wyo.1993); *Hasty v. Hasty*, 828 P.2d 94 (Wyo.1992); *Phillips v. Duro–Last Roofing, Inc.*, 806 P.2d 834 (Wyo.1991); *Vandehei Developers v. Public Serv. Comm'n of Wyoming*, 790 P.2d 1282 (Wyo.1990); *Halliburton Co. v. McAdams, Roux & Assoc.*, 773 P.2d 153 (Wyo.1989); *NL Industries, Inc. v. Dill*, 769 P.2d 920 (Wyo.1989); *Belle Fourche Pipeline Co. v. State of Wyoming, Envtl. Quality Council*, 766 P.2d 537 (Wyo.1988); *Wyoming Ins. Dept. v. Avemco Ins. Co.*, 726 P.2d 507 (Wyo.1986); *Thomson v. Wyoming In–Stream Flow Comm.*, 651 P.2d 778 (Wyo. 1982); *State, ex rel. Fawcett v. Bd. of County Comm'rs of Albany County*, 73 Wyo. 69, 273 P.2d 188 (1954). An unequivocal corollary of that rule is, if the statute is determined to be

plain and unambiguous, the words used are to be given their plain and ordinary meaning. *BHP Petroleum Co., Inc.; Wyoming Game and Fish Comm'n v. Thornock*, 851 P.2d 1300 (Wyo.1993); *Vandehei.* Our reading of WYO.STAT. § 15–1–113 leads to the ineluctable conclusion that the statute is plain and unambiguous, and the words used should be given their plain and ordinary meaning.

We agree with the City that this statute proscribes the relief Reiman sought in the declaratory judgment action. Reiman submitted its bid, accompanied by the required bid bond in the amount of 5% of the total bid, in conformity with subsection (f). The City let the contract for construction of the fire station to Reiman, the lowest bidder it considered qualified, in accordance with the clear mandate of subsection (c) of the statute, providing that the "contract **shall** be let to the lowest bidder." The statute, also in subsection (f), clearly mandates the "bid guarantee **shall** be forfeited as liquidated damages if the bidder, upon the letting of the contract to him, fails to enter into the contract within thirty (30) days after it is presented to him for that purpose or fails to proceed with the performance of the contract."[1]

 This statute, by its language, forecloses any opportunity for Reiman to withdraw its bid without forfeiture of its bid bond. The thrust of the statute is that the bid is irrevocable, and the City is without authority to relieve Reiman from its mistaken bid. According to the plain meaning of this statute, the contractor, in this instance Reiman, must either perform the contract for the original bid price or forfeit the bid bond. The plain, definitive language of WYO.STAT. § 15–1–113 categorically establishes a rule of law in Wyoming that is contrary to the rule invoked by the trial court.

The district court erred in its reliance upon *Powder Horn* to interpret the Wyoming statute. Under the rules we have noted previously, the law of Wyoming is found within the language of the statute itself, and no interpretation is appropriate. Further-

more, the Colorado statute is different and, therefore, distinguishable from the Wyoming statute. Since the court in *Powder Horn* was ruling based upon a Colorado statute, that evidences a clear legislative intent to allow withdrawal of the mistaken bid prior to the letting of the contract without forfeiture of the bid bond, the case can have no viability in Wyoming. We note, for example, that 10 C.R.S. § 24–105–201 (1988) provides, in pertinent part, as follows:

**Bid security.** (1) Bid security shall be required for all competitive sealed bidding for construction contracts when the price is estimated by the procurement officer to exceed fifty thousand dollars. * * * Nothing in this subsection (1) prevents the requirement of such bonds on construction contracts under fifty thousand dollars.

(2) Bid security shall be in an amount equal to at least five percent of the amount of the bid.

\* \* \* ·\* \* \*

(4) After the bids are opened, they shall be irrevocable for the period specified in the invitation for bids, **except as provided in section 24–103–202(6). If a bidder is permitted to withdraw his bid before award, no action shall be had against the bidder or the bid security.** (Emphasis added.)

In 10 C.R.S. § 24–103–202(6) (1988), the exception is articulated in this way:

**Withdrawal of inadvertently erroneous bids before the award may be permitted** pursuant to rules if the bidder submits proof of evidentiary value which clearly and convincingly demonstrates that an error was made. Except as otherwise provided by rules, all decisions to permit the withdrawal of bids based on such bid mistakes shall be supported by a written determination made by the state purchasing director or the head of a purchasing agency. (Emphasis added.)

There, indeed, are very apparent differences between the Wyoming statutes and the

---

1. BLACK'S LAW DICTIONARY 903 (6th ed. 1979) defines "let" as follows:

 To award to one of several persons, who have submitted proposals (bids) therefor, the con-

 tract for erecting public works or doing some part of the work connected therewith, or rendering some other service to government for a stipulated compensation.

Colorado statutes relating to bidding for public construction projects. The Colorado legislature has expressly authorized a permissive procedure for withdrawal of an inadvertently erroneous bid. On the contrary, the Wyoming legislature has mandated forfeiture of the bid bond, as liquidated damages, if the low bidder fails to execute the contract or proceed with construction. There is nothing included in the Wyoming statutes that approaches a procedure for withdrawal or rescission such as found in Colorado.

From the plain and unambiguous language of our Wyoming statute, we must presume this result is what the legislature intended, and this court is "not at liberty to depart from that meaning which is plainly declared." *Parker Land and Cattle Co. v. Wyoming Game and Fish Comm'n*, 845 P.2d 1040, 1043 (Wyo.1993) (*quoting Rasmussen v. Baker*, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We hold that the district court erroneously ruled Reiman had a right to rescind its bid, contrary to the provisions of WYO.STAT. § 15–1–113.

 When Reiman filed its declaratory judgment action, it interrupted the orderly application of the public bidding statutes and, in the course of that litigation, it entered into an agreement with the City, on December 20, 1990, to resolve the dispute over the $71,000 mistake in its bid. As we have noted previously, the contract provided that the decision of the district court in the declaratory judgment action then pending would be dispositive with respect to whether or not Reiman would be paid the additional $71,000. Certainly, this contract was formed peripherally and outside the parameters of WYO.STAT. § 15–1–113. Had this agreement not been made to resolve an issue in litigation, we would be compelled to invoke subsection (*o* ), WYO.STAT. § 15–1–113, and hold the City was without authority to make such a supplemental agreement with respect to a mistake in bidding.

We recently observed that we acknowledge a strong public policy in favor of settlement of litigation. *Haderlie v. Sondgeroth*, 866 P.2d 703 (Wyo.1993) (citing *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27 (Wyo.1983); *Coulter, Inc. v. Allen*, 624 P.2d 1199 (Wyo.1981)). We have previously pointed out that, under the pertinent provision of WYO.STAT. § 15–1–113, Reiman would be entitled to neither reformation nor rescission of its bid. Neither the City nor Reiman is asserting the supplemental agreement is void as a matter of law, however, and, in view of the policy favoring settlements, the court will not of its own motion conclude it is. While a strict application of the statute might require that result, we do not reach it in this instance.

We conclude, and hold, the agreement made in the course of the declaratory judgment was an express contract binding on both parties. The parties in that agreement stated they would abide by the decision of the district court with respect to Reiman's right to rescind. The district court ruled Reiman was entitled to rescind its bid. The district court also ruled Reiman is entitled to receive a total of $1,981,000 for construction of the fire station. That is what the settlement agreement provided. Even though the district court's ruling was erroneous, still the district court decided Reiman could rescind, and the amount of the contract price was established. That amount is $1,981,000, which is the tenor of the judgment in the district court. Reiman is entitled to receive, as the amount payable under the contract, the sum of $1,981,000.

We do note Reiman did agree to the construction of the fire station in accordance with the contract specifications. Reiman accomplished this. The additional amount of $71,000 represents work awarded to, and subsequently completed by, subcontractors of Reiman. There is nothing in the record to indicate this does not establish the appropriate value of the work. The City received what it had bargained for, and that work was accomplished by Reiman. Under these circumstances, we cannot discern any unjust enrichment to Reiman.

Consequently, although we specifically reject the interpretation of the public construction bidding statute arrived at by the district court, the judgment in favor of Reiman is affirmed.

MACY, C.J., files an opinion concurring in part and dissenting in part, in which TAYLOR, J., joins.

MACY, Chief Justice, concurring in part and dissenting in part, with whom TAYLOR, Justice, joins.

Reiman submitted the lowest of several sealed bids to perform a construction contract for the City of Cheyenne. After the bids were unsealed, Reiman asked to withdraw its bid without having to forfeit its bid guarantee because it had accidentally omitted $71,000 in costs from the original bid. The City let the contract to Reiman and informed Reiman that, unless it performed the construction according to the original bid, it would forfeit its bid guarantee.

Reiman filed a petition for a declaratory judgment and a motion for a preliminary injunction in the district court. Before Reiman's claims were heard, however, the parties executed an addendum to the construction contract designed to settle part of their dispute. Reiman agreed to withdraw its motion for a preliminary injunction, to sign the construction contract as amended, and to perform the construction. The City agreed to pay the additional $71,000 and, implicitly, to return Reiman's bid guarantee if the district court ruled that Reiman was entitled to rescind its original bid. Both parties reserved the right to appeal from the district court's ruling.

After the first trial court proceeding and the first appeal to this Court, the district court ruled that Reiman was entitled to rescind its bid and, pursuant to the compromise agreement, to receive the higher contract price. The City brought this second appeal.

The majority holds that the district court erred because in Wyoming a city construction contract bidder is prohibited by an unambiguous statute from withdrawing an erroneous bid without having to forfeit its bid guarantee and because, once a city awards a contract, the city has no authority to modify that contract. Nonetheless, the majority holds that, because of our public policy favoring litigation settlement, the parties' settlement agreement must be enforced. I disagree.

Because we must give effect to the public policy expressed in an unambiguous statute, I would reverse and remand with directions that the original construction contract be enforced.

"Our rule in Wyoming is unequivocal. Municipalities, being creatures of the state, have no inherent powers but possess only the authority conferred by the legislature." *K N Energy, Inc. v. City of Casper*, 755 P.2d 207, 210 (Wyo.1988); *but cf.* WYO. CONST. ART. 13, § 1 (home-rule amendment authorizing cities and towns to elect out of certain statutes which are not uniformly applicable). "When the statutory delegation of power to a local governmental entity specifies a procedure to be followed in the exercise of that power, the procedure becomes a condition of and restriction upon the grant." *Schoeller v. Board of County Commissioners of County of Park*, 568 P.2d 869, 877 (Wyo.1977).

A city's authority to contract for public improvements is circumscribed by statute. WYO.STAT. § 15–1–113 (1992). Any contract made in violation of § 15–1–113 is void. Section 15–1–113(*o*). "Where a municipal contract is void because it is opposed to a mandatory statute, no contract or benefit can be implied." *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, School District No. 25, Fremont County, Wyoming*, 681 P.2d 1326, 1330 (Wyo.1984). A bid to perform a public construction contract is an irrevocable offer, and, once the public body makes the award, it loses its discretion to rescind the contract. *Id.* at 1332.

Only two remedies are available under § 15–1–113 for a mistake which has been made in the lowest qualified and responsible bid. First, with an appropriate finding, the City may reject all bids and rebid the project. *Four Nines Gold, Inc. v. 71 Construction, Inc.*, 809 P.2d 236, 237 (Wyo.1991) (citing § 15–1–113(c)). Second, the bidder may decline either to execute the contract or to perform the construction and thereby forfeit its bid guarantee. Section 15–1–113(f).

Nowhere in § 15–1–113, or in any of our statutes, is the City granted authority to negotiate away a low bidder's obligation to

either "enter into" or "proceed with the performance of" the construction contract as bid. Section 15–1–113(f); *compare* § 15–1–113 *with* WYO.STAT. § 16–6–117 (1990) (authorizing settlement of disputed cost claims at the time the final payment is made) *and* WYO. STAT. § 16–6–701(a)(iv) (1990) (recognizing modifications in contract performance terms by "change orders agreed to by the parties"). The City's agreement compromising the terms of its public improvement contract is not only unauthorized but also expressly prohibited by § 15–1–113(*o*).

Section 15–1–113 " 'is by no means a general grant of power, but is narrowly tailored to set procedural standards.' " *City of Green River v. Debernardi Construction Co., Inc.*, 816 P.2d 1287, 1292 (Wyo.1991) (quoting the trial court opinion letter with approval). "In the absence of any suggestion that the legislature so intended, this court will not extend through judicial fiat what the legislature has not chosen to express in statute." *K N Energy, Inc.*, 755 P.2d at 216.

"When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991) (reversing 495 U.S. 903, 110 S.Ct. 1921, 109 L.Ed.2d 285 (1990)), *on remand*, 930 F.2d 33 (10th Cir.1991). "The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this Court. Congress may amend the statute; we may not." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 576, 102 S.Ct. 3245, 3253, 73 L.Ed.2d 973 (1982) (reversing 454 U.S. 1052, 102 S.Ct. 595, 70 L.Ed.2d 587 (1981)), *on remand*, 685 F.2d 139 (5th Cir.1982).

Similarly, our Legislature may amend § 15–1–113 to permit settlement negotiations between a city and its contract bidders. We may not. For this reason alone, we must reverse the trial court's ruling.

Even if our statutes did not require reversal, an analysis of the competing public policies would result in requiring reversal. The public policy expressed by § 15–1–113 is "[t]o safeguard public funds by preventing extravagance in their expenditure." *Centric Corporation v. Barbarossa & Sons, Inc.*, 521 P.2d

874, 875 (Wyo.1974). That policy was circumvented when the City relinquished $71,-000 in public money in violation of the competitive bidding statute.

To measure against this loss of public money, the majority offers the public's interest in litigation settlement. The majority's justification is baffling. The settlement agreement in this case expressly anticipated future litigation. It has, in fact, produced over three years of litigation. Agreements designed to produce protracted litigation should not be encouraged. *See Reiman Corporation v. City of Cheyenne*, 838 P.2d 1182, 1190 (Wyo. 1992) (Thomas, J., dissenting) (dispositive public policy concern should be preservation of the competitive bidding process by enforcing clear language of § 15–1–113).

The majority contends that, because neither party challenged the validity of the compromise agreement, we should not address that issue. Again, I disagree.

It is a court's duty, on its own motion, to refuse to entertain an action from an agreement expressly made illegal by statute. *Williams v. Weber Mesa Ditch Extension Company, Inc.*, 572 P.2d 412, 414–15 (Wyo. 1977). Contracts cannot be used to hoodwink the law and cannot rise above constitutional and statutory law. *Tri–County Electric Association, Inc. v. City of Gillette*, 584 P.2d 995, 1004 (Wyo.1978).

Nor should we encourage the making of agreements designed to compromise an unequivocal statutory duty. *See Ballangee v. Board of County Com'rs of Fremont County*, 66 Wyo. 390, 212 P.2d 71, 76 (1949) (agreement to compromise a mandatory statutory duty is void because it is unsupported by consideration). The people gain nothing when their city agrees to relax the statutory obligations of a public contract bidder. *Cf.* WYO. CONST. Art. 3, § 40 (prohibiting a municipal corporation from diminishing obligations owed to it, except as prescribed by the Legislature).

The taxpayers in this case have needlessly paid not only the $71,000 forsaken by the City's unlawful agreement but also the costs of the City's attorneys and the court personnel involved in this litigation. Sadly, I re-

peat: "Everyone involved in this controversy can take credit for making a simple matter complex and excessively litigious." *Cook v. Zoning Board of Adjustment for the City of Laramie,* 776 P.2d 181, 187 (Wyo.1989) (Macy, J., concurring in part and dissenting in part).

I concur with the majority's conclusion that the statute is unambiguous. I would, however, reverse the trial court's ruling and remand the case with directions that the original contract be enforced. I, therefore, dissent from the majority's disposition of the case.