**V-1 OIL COMPANY, Petitioner,**

v.

**The Honorable Robert B. RANCK, Judge of the District Court for the Ninth Judicial District, Respondent.**

No. 88-168.

Supreme Court of Wyoming.

Jan. 12, 1989.

Stephen H. Kline and Kathryn Jenkins of Kline & Buck, Cheyenne, for petitioner.

Peter J. Mulvaney, Deputy Atty. Gen., Cheyenne, for respondent.

David B. Hooper of Hooper Law Associates, P.C., for CC & T, Inc., and the Estate of Michael James Woodward as amicus curiae.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

On a writ of certiorari petitioner V-1 Oil Company (V-1) seeks a stay of proceedings in a negligence action it filed in the Ninth Judicial District, Fremont County, Wyoming. See W.R.A.P. 13.01 (Cum.Supp. 1988). Respondent, the Honorable Robert B. Ranck, District Judge of that district, was assigned to the case. V-1 seeks the stay pending the outcome of a similar lawsuit set for trial in state district court in Rich County, Utah. V-1 filed its action in both Wyoming and Utah to protect its claim against an alleged tortfeasor's estate, the assets of which are located in Wyoming. V-1's uncertainty about which court has jurisdiction of the negligence action results from the ambiguity of the phrase "proper court" which appears in W.S. 2-7-718 (July 1980 Repl.).

We will stay the Wyoming proceedings pending the outcome of the Utah action.

## FACTS

Counsel for the parties here failed to include any page references to the record on appeal in their briefs. We caution attorneys practicing before this court to comply with W.R.A.P. 5.01(3), which requires that briefs to this court will contain "a statement of the facts relevant to the issues presented for review, *with appropriate page references to the record.*" (Emphasis added.)

On October 16, 1986, Michael James Woodward was driving a semi-tractor trailer owned by CC & T, Inc., (CC & T) on Highway 16 in Rich County, Utah. He collided with a cow owned by Louis Stuart, and the collision caused the truck to travel across an adjacent field and crash into a propane storage tank owned by V-1. This set off an explosion, which killed Mr. Woodward and caused substantial damage to V-1 property.

On April 24, 1987, V-1 filed a creditor's claim in the district court sitting in probate

in Fremont County, Wyoming, with Randy Woodward as personal representative of Michael Woodward's estate (Estate). See W.S. 2–7–706 (July 1980 Repl.). In the claim V–1 sought recovery for property damage caused by decedent's Utah accident. Randy Woodward, as personal representative of the Estate, rejected V–1's claim in early May 1987.

V–1 filed a negligence action against CC & T, Randy Woodward as personal representative of the Estate, and Louis Stuart, the owner of the cow, in Utah federal district court in the spring of 1987. That action was dismissed for lack of jurisdiction. On May 21, 1987, V–1 filed the same action in the district court in Rich County, Utah. On May 28, 1987, V–1 also filed the same action in the district court in Fremont County, Wyoming. V–1 filed suit in Wyoming out of a fear that it might waive its right to recover against the Estate if it did not file suit in the Wyoming district court having probate jurisdiction over the Estate. The Wyoming action was the same as the Utah action except that Louis Stuart, the owner of the cow and a Utah resident, later filed a special appearance to contest the long arm jurisdiction of the Wyoming district court.

On November 13, 1987, V–1 moved the Wyoming district court for an order staying the Wyoming proceedings pending a decision in the Utah district court action. V–1 then unsuccessfully tried to obtain a stipulation from CC & T and the Estate to stay the Wyoming proceedings. Counsel for V–1 informed the Wyoming district court that CC & T and the Estate would not stipulate to a stay, and the Wyoming district court denied V–1's motion on December 18, 1987. The parties conducted discovery through May 3, 1988, when the Wyoming district court filed a "Pretrial Conference Report and Order" cutting off discovery on June 10, 1988, imposing a settlement deadline of June 24, 1988, and dismissing Louis Stuart from the Wyoming action. On May 12, 1988, V–1 filed an objection to the pretrial order along with a "Motion to Designate Pending Utah Proceeding As a Proper Court Under Wyoming Statute." CC & T and the Estate respond-

ed to V–1's motion by arguing that it was, in essence, a motion to dismiss the Wyoming action and urging the Wyoming district court to allow the case to proceed. On June 13, 1988, the Wyoming district court recognized the possible propriety of the Utah court's jurisdiction, but ordered that the "proper court" for purposes of W.S. 2–7–718 was in Wyoming where the Wyoming action was filed. Trial was set for August 8, 1988. In the order the Wyoming district court stated "[t]his court, however, believes that the Utah case will take 'forever' to get to trial and that does not promote a speedy efficient system for liquidating the estate of the decedent. This court has jurisdiction and this case will go forward as scheduled." On June 7, 1988, the Utah district court had heard argument and discussion on a V–1 motion to expedite the trial setting in the Utah action. The Utah court set an initial trial date of October 11, 1988, and a back-up trial date of January 30, 1989. V–1 moved the Wyoming district court for a continuance on June 13, 1988; that motion was denied on June 22, 1988.

On June 24, 1988, V–1 filed in this court a petition for a writ of certiorari requesting the stay denied by the Wyoming district court. We granted the petition on June 29, 1988, and heard oral argument and took the case under advisement on October 12, 1988. At oral argument counsel informed this court that trial in Utah did not begin on October 11, 1988, but would begin on January 30, 1989.

### THE "PROPER COURT"

◼ Any person with a claim against an estate with assets and probate administration located in Wyoming cannot maintain an action on the claim until it has been rejected by the personal representative of the estate. W.S. 2–7–717 (July 1980 Repl.). The holder of the claim must then comply with W.S. 2–7–718 which provides:

When a claim is rejected and notice given as required, the holder [of the claim] *shall bring suit in the proper court* against the personal representative within thirty (30) days after the date

of mailing notice, otherwise the claim is forever barred. (Emphasis added).

The phrase "proper court" is ambiguous as used in this statute because its plain language is susceptible to more than one meaning. *State ex rel. Department of Revenue and Taxation, Motor Vehicle Division v. McNeese*, 718 P.2d 38, 40 (Wyo. 1986). The phrase "proper court" can mean either the Wyoming district court with probate jurisdiction or any state's court with proper jurisdiction over the parties and the subject matter. When construing an ambiguous statutory phrase we focus primarily on seeking the legislature's intent. Department of Revenue and Taxation of the *State of Wyoming v. Hamilton*, 743 P.2d 877, 879 (Wyo.1987). To discern that intent, we presume legislative enactments to be "reasonable and logical, and further assume that it is the intent of the legislature to enact only that which is just." *McNeese*, 718 P.2d at 40. Those standards apply here.

■ In support of the order denying the stay, the Wyoming district court argues that the holding in *Bergeron v. Loeb*, 100 Nev. 54, 675 P.2d 397 (1984) is persuasive authority. In *Bergeron*, a person sought to impose an equitable claim upon a trust, the assets of which were shares of corporate stock registered in the decedent's name. The decedent's trust estate was being administered in Nevada where the stock certificates were located. The estate's executrix rejected the claim, and the claimant, within the requisite sixty-day period under Nevada probate law, filed suit on the rejected claim. He filed suit, not in the Nevada state district court, but in the New Hampshire federal district court under its equity jurisdiction to hear suits in favor of claimants against a decedent's estate to establish their claims. Since this federal equity jurisdiction is an exception to the general denial of diversity jurisdiction as to probate matters, the exception applies only if the federal court does not interfere with a state's probate proceedings, does not assume general jurisdiction of the state court's probate, or does not assume control of the property in the state court's custody. *Id.* 675 P.2d at 401.

Subsequently, in a Nevada state district court declaratory judgment action, that court barred the equitable claim because the claimant had not sued on the claim in the Nevada state district court within the requisite sixty-day period under Nevada probate law. *Id.* at 399. The Nevada probate statute then in effect was identical to current W.S. 2-7-718, requiring the rejected claim holder to file suit on the claim in the "proper court." Nev.Rev.Stat. 147.-130(1) (1983) cited in *Bergeron*, 675 P.2d at 399 n. 1. On direct appeal, the Nevada Supreme Court affirmed, holding that the spirit of the Nevada probate statutes dictated that the "proper court" would be the Nevada district court with in rem jurisdiction over the estate's assets. *Bergeron*, 675 P.2d at 400–401. The court stated: "[Claimant's] action in federal district court in New Hampshire essentially petitions that court to determine the ownership of the trust res which is under the [in rem] jurisdiction of the Nevada district court." *Id.* at 401. In that sense, the critical issue in *Bergeron* was whether the New Hampshire federal district court could *interfere* with the probate jurisdiction of the Nevada state district court or could assume custody and control over the stock certificates located in Nevada.

The critical issue in this case is different from the *Bergeron* issue: Whether the decedent was negligent on the day of the accident. If he was, his liability for V–1's property damage will simply result in a recovery from the Estate. We agree with the Nevada Supreme Court's desires to achieve prompt administration of "probate matters" and to guard the exclusive jurisdiction of the district court sitting as the probate court. *Bergeron*, 675 P.2d at 400, 401 (citing *Lo Sasso v. Braun*, 386 P.2d 630, 632 (Wyo.1963)). We disagree, however, with the Wyoming district court's broad interpretation of that holding. The statutory policy of protecting the jurisdiction of the probate court is not always furthered by forcing *every* rejected claim against an estate with assets and probate administration located in Wyoming to be litigated in the Wyoming district court hav-

ing probate jurisdiction without regard for the substantive character of the litigation. The action filed in Utah is not one to determine ownership of physical assets of a Wyoming estate; further, the subject matter of the negligence action is not a "probate matter" that can be resolved by the Wyoming district court sitting in its exclusive capacity as the probate court under W.S. 2-2-101 (July 1980 Repl.). See also *Matter of Estate of Harry B. Fulmer*, 761 P.2d 658, 660 (Wyo.1988). Instead, this is a tort action against the personal representative of decedent's estate that might result in a recoverable claim in the form of a civil judgment against that estate.

With this distinction in mind, we will construe the phrase "proper court" in W.S. 2-7-718 in a way that promotes the prompt, orderly, and economic administration and settlement of estates. We hold that the "proper court" in which to file suit on the rejected claim is any court of general jurisdiction with personal and subject matter jurisdiction over the underlying action. This construction of the statute precludes our consideration of both parties' arguments concerning principles of comity; we will not address them for that reason.

■ The facts of this case suggest that the extraordinary relief of staying the Wyoming action, pending the outcome of the Utah action, is appropriate. Both the Wyoming and Utah district courts have subject matter jurisdiction over V–1's civil action. See Utah Const. art. VIII, § 7; Utah Code. Ann. § 78-3-4 (1987 & Supp.1988); Wyo. Const. art. 5, § 10; W.S. 2-2-101 (Cum. Supp.1986). A comparison of both courts' personal jurisdiction, however, does not reveal the same similarity. The Utah district court has personal jurisdiction over all of the defendants in this case. Conversely, the Wyoming district court has already dismissed Louis Stuart, the owner of the late errant cow, from the action filed in the Wyoming district court. This is not to say that the action could not be tried in Wyoming among all the parties, except Mr. Stuart. Those parties could assign various percentages of negligence to Mr. Stuart, which, of course, would not be binding on

him. See *Burton v. Fisher Controls Company*, 713 P.2d 1137, 1143–1144 (Wyo.1986) (citing *Kirby Building Systems v. Mineral Explorations Company*, 704 P.2d 1266, 1272–1273 (Wyo.1985). It is certain, however, that the Utah district court has personal jurisdiction over all of the defendants named in V–1's complaint, including Mr. Stuart. The Utah district court could resolve all liability questions together and enter a judgment binding against all of the parties. A trial in Utah where the district court has subject matter jurisdiction over the action and personal jurisdiction over all the defendants in this case would be the most efficient in this regard.

Considering choice of law, if V–1's negligence action were to be tried in Wyoming, the Wyoming district court would probably have to apply Utah's negligence laws. In Wyoming, the law that governs substantive aspects of a negligence action is the law of the place where an alleged tort occurred. *Duke v. Housen*, 589 P.2d 334, 342 (Wyo.), cert. denied 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). Here, the place of the alleged tort is Utah, and the negligence laws of Utah should control. If the case were tried in Utah, it would be tried before a court applying the substantive law with which it is familiar.

In considering V–1's negligence action against the defendants in terms of subject matter and personal jurisdiction, the district courts of both states are "proper court[s]" to try the action. In reviewing the ability of both district courts to resolve that action expeditiously, the Utah district court is the better forum.

CONCLUSION

This court has judicial discretion to review this matter on a writ of certiorari under Wyo. Const. art. 5, § 3; and W.R.A. P. 13.01 (Cum.Supp.1988). In exercise of that discretionary review we may order relief to correct an abuse of district court discretion. See *Wright v. State*, 707 P.2d 153, 155–157 (Wyo.1985); and W.R.A.P. 13.-03 (Cum.Supp.1988). Under the unique facts of this case, we hold that the Wyoming and Utah district courts are both

"proper court[s]" under W.S. 2–7–718 for V–1's negligence action against the Estate. However, the forum most likely to resolve V–1's negligence action expeditiously and in furtherance of the best interests of the administration of justice sits in Rich County, Utah.

We grant the stay of the Wyoming proceedings requested by V–1.