**STATE of Wyoming, WYOMING GAME AND FISH COMMISSION, Appellant (Respondent),**

v.

**J.R. THORNOCK, Appellee (Petitioner).**

No. 92–205.

Supreme Court of Wyoming.

May 13, 1993.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, Deputy Atty. Gen., and Ron Arnold, Sr. Asst. Atty. Gen., for appellant.

Margo Harlan Sabec, Casper, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The dispositive issue for this case is whether arbitrators, appointed pursuant to Wyo.Stat. § 23–1–901(d) (1991), are vested with authority to award to a landowner the cost of materials and expense of constructing a stack yard fence which had been built by the landowner claimant partially with materials that were furnished by the Game and Fish Commission. Collateral issues are raised concerning the appointment of an arbitrator whose brother was married to the claimant's sister [1] and hostility of the spectators at the arbitration hearing, which is claimed to have caused counsel for the Game and Fish Commission to limit his participation in the hearing. We are satisfied the statute does not authorize the award of the construction expenses claimed in this instance, and the decision of the district court, which affirmed the arbitration award, must be reversed and the award set aside. We find no error with respect to the other issues that assist in the disposition of this appeal.

The State of Wyoming, Wyoming Game and Fish Commission (Commission), as appellant in this case, summarizes the issues in its brief in this way:

I. Whether the arbitrators exceeded their powers by awarding monies for improvements not damaged by wildlife.

II. Whether there was partiality by an arbitrator related to the claimant, necessitating setting aside the award.

III. Whether the arbitrator's action in denying the appellant counsel necessitates setting aside the award.

Thornock, as appellee, describes the issues as follows:

I. The arbitration award was for actual damages, and was wholly within the authority of the statutory arbitration board. The district court judgment that the arbitrators did not exceed their powers in making the award should be affirmed.

 A. Wyoming Statutes and regulations require payment of actual damages.

 B. "Actual damages" are compensatory damages.

 C. "Actual damages" include awards in restitution for unjust enrichment under quasi-contract.

 D. The state may be liable under quasi-contract.

---

**1.** A factual discrepancy exists with respect to the relationship. The State asserts that the arbitrator's brother was married to Mr. Thornock's sister. Mr. Thornock, on the other hand, contends that the arbitrator's brother is married to the sister of Mr. Thornock's wife. The disposition of the case does not depend upon a determination as to which version is correct.

E. Appellee constructed the "game fence" yard at appellant's request and is entitled to restitution therefor.

F. Appellee constructed the "game fence" yard under duress from appellant and is entitled to restitution therefor.

G. The measure of actual damages in a restitution award is the value of labor and materials furnished, plus interest.

H. Arbitration award of actual damages was within the authority of the arbitration board and the statutory waiver of sovereign immunity.

I. The award does not include any award on punitive damages.

II. Appellant has failed to prove evident partiality or bias of an arbitrator which prejudiced its rights.

III. Appellant waived, by implied waiver, its rights to object to arbitrator Birch on the ground of partiality or bias, and cannot withdraw such waiver or reclaim its right to object.

IV. The arbitration board did not prohibit appellant's counsel from participating in the proceeding, and the action of the arbitrators did not prejudice the rights of appellant.

Thornock owns a ranch in Lincoln County. During the summer months, he farms his irrigated land and cuts and stores his hay crop in stacks near his fields. Thornock had constructed a "cow fence" style of stack yard enclosure which he maintained around his haystacks to keep his livestock out of the stored hay.

In 1991, Thornock presented several claims to the Wyoming Game and Fish Department (Department) for damage to stored hay and fences surrounding the stack yards caused by elk. The Department paid $2,795.80 on these claims, and those amounts were accepted by Thornock and are not at issue in this case. In addition to his other claims for damage to hay and fences, Thornock filed a claim with the Department for the cost of certain building materials and the expense of labor in constructing a new elk-proof stack yard fence. On April 10, 1991, without any charge to Thornock, some materials to be used in constructing this new fence were furnished to him by the Department. At the time the materials were delivered to Thornock, he was advised it was not the policy of the Department to pay construction costs nor to provide material for gates.

Thornock proceeded to construct the new stack yard fence designed to keep elk out of the hay. He kept track of his costs and, about August 20, 1991, submitted a claim in the amount of $1,850.50 to the Department. In that claim, Thornock requested that the Department pay the expense of the labor and the cost of the additional materials used to build the stack yard fence designed to keep wildlife away from his· hay. The claim was presented pursuant to Wyo.Stat. § 23–1–901 (1991), which provides, in pertinent part:

(a) Any landowner, lessee or agent whose property is being damaged by any of the big or trophy game animals or game birds of this state shall, not later than fifteen (15) days after the damage is discovered by the owner of the property or the representative of the owner, report the damage to the nearest game warden, damage control warden, supervisor or commission member.

(b) Any landowner, lessee or agent claiming damages from the state for injury or destruction of property by big or trophy game animals or game birds of this state shall present a verified claim for the damages to the Wyoming game and fish department not later than sixty (60) days after the damage or last item of damage is discovered. The claim shall specify the damage and amount claimed. As used in this subsection, "verified claim" means a claim which the claimant has signed and sworn to be accurate before a person authorized to administer oaths.

In a letter dated September 27, 1991, the Department rejected this claim on the ground it was not a claim for damages caused by wildlife. Thornock appealed the decision of the Department to the Commission, pursuant to Wyo.Stat. § 23–1–901(c), which provides:

(c) The department shall consider the claims based upon a description of the livestock damaged or killed by a trophy game animal, the damaged land, growing cultivated crops, stored crops, seed crops, improvements and extraordinary damage to grass. Claims shall be investigated by the department and rejected or allowed within ninety (90) days after submission, and paid in the amount determined to be due. In the event the department fails to act within ninety (90) days, the claim, including interest based on local bank preferred rates, shall be deemed to have been allowed. No award shall be allowed to any landowner who has not permitted hunting on his property during authorized hunting seasons. Any person failing to comply with any provision of this section is barred from making any claim against the department for damages. Any claimant aggrieved by the decision of the department may appeal to the commission within thirty (30) days after receipt of the decision of the department as provided by rules of practice and procedure promulgated by the commission. The commission shall review the department decision at its next meeting following receipt of notice of request for review. The commission shall review the investigative report of the department, and it may approve, modify or reverse the decision of the department.

The Commission, upon review, rejected the claim for the same reason as the one given by the Department, and Thornock was notified of that decision on March 5, 1992.

On April 17, 1992, Thornock pursued the statutory claim process by calling for arbitration pursuant to Wyo.Stat. § 23–1–901(d). This section of the statute provides:

(d) Within ninety (90) days after receiving notice of the decision of the commission, the claimant may in writing to the department call for arbitration. Within fifteen (15) days after the department receives the call for arbitration, the claimant and the department shall each appoint a disinterested arbitrator who is an elector residing in the county where the damage occurred and notify each other of the appointment. Within twenty (20) days after their appointment, the two (2) arbitrators shall appoint a third arbitrator possessing the same qualifications. If the third arbitrator is not appointed within the time prescribed, the judge of the district court of the county or the court commissioner in the absence of the judge shall appoint the third arbitrator upon the application of either arbitrator.

A panel of three arbitrators was selected, which, in accordance with the required notice, heard the case on June 29, 1992, in Cokeville. On July 9, 1992, the Commission received a decision from the arbitrators, which awarded $850 to Thornock on his claim. The arbitration award then was appealed to the District Court of the Third Judicial District in Lincoln County by the Commission in accordance with Wyo.Stat. § 23–1–901(e). On September 2, 1992, the district court entered its order denying the petition to vacate the arbitration award and confirming the award. The Commission has taken a timely appeal from that order.[2]

■ In his brief in this appeal, Thornock has asserted a plethora of facts, without including *any* page references to the record as required by Wyo.R.App.P. 5.01(3), now found in Wyo.R.App.P. 7.01(e)(2). The Commission has complied with this rule, because references to the record are encompassed in its Statement of the Facts. In order to provide a factual background to address the legal issues, we have relied upon the version of the proceedings in this case that the Commission has articulated in its Statement of the Case. Thornock failed to include such a section in his Brief of Appellee. Still, the only fact we can verify conclusively from the record is that Thornock is a rancher in Lincoln County. The record does not permit us to verify the remainder of the facts for accuracy or validity, and it totally fails to support the facts set forth by Thornock in his brief.

**2.** There is no transcript of the proceedings in the district court in the record on appeal. However, there is a transcript from the arbitration proceedings.

We have admonished members of the Bar and cautioned them with respect to the necessity of complying with Wyo.R.App.P. 5.01(3), now Wyo.R.App.P. 7.01(e)(2), on numerous occasions, iterating the last such comment quite recently. *See Coones v. Fed. Deposit Ins. Corp.*, 848 P.2d 783 (Wyo.1993); *Inter–Mountain Threading, Inc. v. Baker Hughes Tubular Services, Inc.*, 812 P.2d 555 (Wyo.1991); *Jung–Leonczynska v. Steup*, 782 P.2d 578 (Wyo. 1989), *appeal after remand*, 803 P.2d 1358 (Wyo.1990); *V–1 Oil Co. v. Ranck*, 767 P.2d 612 (Wyo.1989). The Commission has not requested any sanction in this case because of Thornock's non-compliance with the rule, and we choose not to impose any. This record is brief, and it does contain the information requisite to address the dispositive legal question in this case. We renew our admonition to members of the Bar, however, and suggest that, had the State requested that we refuse to consider Thornock's contentions, we would have been justified in so doing.

■ In *Parker Land and Cattle Co. v. Wyoming Game and Fish Comm'n*, 845 P.2d 1040 (Wyo.1993), we had occasion to consider the thrust of Wyo.Stat. § 23–1–901. We there summarized our approach to interpretation of this statute in this way:

> We read the text of the statute and pay attention to its internal structure and the functional relation between the parts and the whole. We make the determinations as to meaning, that is, whether the statute's meaning is subject to varying interpretations. If we determine that the meaning is not subject to varying interpretations, that may end the exercise, although we may resort to extrinsic aids of interpretation, such as legislative history if available and rules of construction, to confirm the determination. On the other hand, if we determine that the meaning is subject to varying interpretations, we must resort to available extrinsic aids. If an ambiguous statute has been construed by an agency charged with administering it, we will accord deference to, but are not bound by, that construction. After all, the final construction of an ambiguous statute is a question for the court.

*Parker*, 845 P.2d at 1045. *See also Sheridan Commercial Park, Inc. v. Briggs*, 848 P.2d 811 (Wyo.1993).

We held that the statute is not ambiguous. When the language in a statute is plain and unambiguous, the words are to be accorded their plain and ordinary meaning unless there is found some manifestation of a legislative intent that they not be accorded that plain and ordinary meaning. *Jackson State Bank v. King*, 844 P.2d 1093 (Wyo. 1993); *Belle Fourche Pipeline Co. v. State*, 766 P.2d 537 (Wyo.1988).

■ The contention of the Commission is that the award made by the arbitrators to Thornock should be set aside because the arbitrators exceeded their authority by compensating him for construction of the stack yard fence. Wyo.Stat. § 23–1–901(e) cross-references provisions of the Uniform Arbitration Act, Wyo.Stat. §§ 1–36–101 to –119 (1988). Through case law analysis, the Commission relies indirectly upon Wyo. Stat. § 1–36–114(a)(iii), which provides:

> (a) Upon application of a party the court shall vacate an award where:
>
> \* \* \* \* \* \*
>
> (iii) The arbitrators exceeded their powers \* \* \*.

The Commission also contends the arbitrators have no greater power than the authority conferred by Wyo.Stat. § 23–1–901(d), which limits their power to the arbitration of damage claims presented under the statute. The Commission's position is correct.

The Commission cites rules and regulations it has promulgated, which define damage in this way:

> "Damage" as used in W.S. 23–1–901 means actual damage as proved to have occurred by the claimant, to livestock, land, crops, improvements, and extraordinary grass damage, and shall not include any amount for punitive damages under any circumstances.

Regulations of Wyoming Game and Fish Commission, Ch. XXVIII, Regulation Gov-

erning Big or Trophy Game Animals or Game Bird Damage Claims, § 3(c) (1985). Thornock argues that the damages the arbitrators awarded constitute compensatory damages for his fencing, and he is entitled to have the award pursuant to a quasi-contract theory, a restitution theory, or a theory of duress. These arguments quite obviously go far beyond the language of the statute.

The statutory language authorizing such claims states specifically that damage to property by wildlife will be compensated. It does not allude to the expenses of constructing a fence as a measure to avoid further damage. Thornock even concedes in his brief that "[a]lthough that statute [Wyo.Stat. § 23–1–302] does not specifically empower the Commission to contract for fence construction, it does give the Commission broad and pervasive powers and authority to enter into contracts in which fence construction would ordinarily be a minor part * * *." We previously have alluded to the rule that when the language in a statute is plain and unambiguous, as it is here, those words are to be given the plain and ordinary meaning. It is clear the arbitrators exceeded their authority when they compensated Thornock for the construction of the stack yard fence. That expense is not a claim for damage within the statute.

■ Collateral issues appear relating to the selection of an arbitrator whose brother was married either to Thornock's sister or to Thornock's wife's sister and the hostility of spectators at the arbitration hearing that resulted in the limitation of his participation in the arbitration hearing by counsel for the Commission. The Commission relies upon Wyo.Stat. § 1–36–114(a)(ii) as authority to support its argument to vacate the award. That provision states:

(a) Upon application of a party the court shall vacate an award where:

 * * * * * *

(ii) There was evident partiality by an arbitrator appointed as a neutral, corruption of any of the arbitrators or misconduct prejudicing the rights of any party * * *.

This provision assumes there is a demonstration of partiality or corruption or misconduct which resulted in prejudice to the rights of a party. The contention of the Commission is that the appointment of an arbitrator who in some manner was related to Thornock's wife or sister was prejudicial. Beyond that, there is nothing to demonstrate, nor does the Commission point out, any evidence of partiality by a neutral arbitrator, corruption, or misconduct.

We are not persuaded that the argument by the Commission demonstrates any prejudice to either party because of the relationship suggested. Furthermore, we find nothing in the record suggesting any actual prejudice. The reasoning of the district court is persuasive:

Considering the grounds for vacation of an arbitration award contained in the statute to which reference has been made, it is clear that there is nothing in the record indicating that because one of the arbitrator's was related to the Claimant by marriage that either this arbitrator or the other arbitrators were corrupt. It does not appear that the award was obtained by fraud or other undue means.

The record does not reflect evidence partiality by any of the arbitrators. The record does not reflect misconduct by any of the arbitrators. The record only reflects that one of the arbitrators had a brother who was married to J.R. Thornock's sister. Without further evidence, this kind of marriage relationship is neutral. It is just as reasonable for the Court to assume that someone would disfavor his shirttail relatives as it is to assume that he or she would favor their shirttail relatives.

There is no error here, although it would seem appropriate for the neutral arbitrator, selected under the statute, always to disclose any relationship that might raise concern. Obviously, in view of our disposition of the case, the composition of the Board of Arbitration is not material to the case.

■ With respect to the claim that the hostility of the spectators caused counsel for the Commission to limit his partic-

ipation in the arbitration hearing, we find this contention difficult, if not impossible, to evaluate. The quality of the transcription of the arbitration proceedings does not permit us to either verify or refute the contentions of the Commission. The transcript was prepared from a tape recording, and often the speaker is not identified. Consequently, we cannot determine the extent of the participation of counsel for the Commission. We can only conclude counsel was present and did participate in the arbitration proceedings. We do not know the extent of that participation, but we assume counsel fulfilled his obligation to his client. Since we are unable to discern a violation of the rights of the parties, particularly with respect to the right to counsel, we conclude that no error exists with respect to this collateral issue.

In any event, the issues lose their import in view of the decision that the statute does not authorize the award of construction expenses claimed by Thornock. The decision of the district court affirming the arbitration award is reversed and the arbitration award is set aside.

CARDINE, Justice, dissenting.

I would affirm the decision of the arbitrators and the district court and, therefore, dissent.

In this case, each year appellee sustained damage by elk to stored hay. Appellee's stored hay was protected by a cow fence that was insufficient to keep elk out of the hay. This fence was damaged by elk in gaining entry to the hay stacks. The Game and Fish Department suggested that appellee replace the damaged cow fence with a more substantial game fence and supplied, without charge, material to construct this game fence. Appellee furnished some additional material which, together with the material furnished by Game and Fish and his labor, was used to repair, replace and reconstruct his fence. He then submitted a bill to Game and Fish for his labor and cost of the additional material he supplied in the amount of $1,850.50.

Game and Fish denied his claim of $1,850.50. Arbitrators were appointed pursuant to the rules for appointment of arbitrators, and a hearing was held at which testimony and evidence were received. Appellee was awarded damages of $850 by the arbitrators. The existing fence was replaced by a more substantial game fence at the request of Game and Fish. It is only fair and just that, having complied with that request, he be awarded at least the value of material he supplied and for the damage to his cow fence which was repaired and made into a more substantial game fence.

I would hold that the award was for damages to his cow fence and was proper as a matter of law. I would affirm the decision of the district court.