# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 56

### APRIL TERM, A.D. 2022

### April 28, 2022

IN THE MATTER OF THE CLAIM
FOR DAMAGES FILED BY JOSH
LONGWELL WITH THE WYOMING
GAME AND FISH DEPARTMENT:

JOSH LONGWELL,

Appellant
(Claimant),

v.                                                          S-21-0173

WYOMING GAME AND FISH
DEPARTMENT,

Appellee
(Respondent).

*Appeal from the District Court of Hot Springs County*
The Honorable Bill Simpson, Judge

*Representing Appellant:*
> Drake D. Hill, Hill Law Firm, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; James Kaste, Deputy Attorney General; Matt VanWormer, Senior Assistant Attorney General; Jenny Staeben, Senior Assistant Attorney General. Argument by Ms. Staeben.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   Josh Longwell, a Hot Springs County rancher, appeals from the district court's modification of an arbitration award compensating him for calf damage he sustained during the 2018 grazing season as a result of grizzly bear predation.  Because the arbitrators made an award on a matter not submitted to them, we affirm the court's modification of the award.

## ISSUE

[¶2]   The dispositive issue in this appeal is:

Did the district court err in modifying the arbitration award under Wyo. Stat. Ann. § 1-36-115(a)(ii) (LexisNexis 2021) because the arbitrators "awarded upon a matter not submitted to them"?

## FACTS

[¶3]   Mr. Longwell operates a large cattle and sheep ranch in the Owl Creek area of Hot Springs County, Wyoming.   The ranchlands range from irrigated pastures to high mountains.  Grizzly bears live in the area and frequent the ranch.  During the 2018 grazing season, Mr. Longwell found a number of his calves dead from what he believed to be grizzly bear predation.  Upon observing one of the dead calves, he reported it to the Wyoming Game and Fish Department (Department), which is charged by Wyo. Stat. Ann. § 23-1-901(c) (LexisNexis 2021) with investigating a landowner's claim that his livestock were damaged by a trophy game animal, including "black bear, grizzly bear or mountain lion," and compensating him for such damage if it was caused by a trophy game animal. Wyo. Stat. Ann. § 23-1-101(a)(xii)(A) (LexisNexis 2021) (defining "[t]rophy game animal").

[¶4]   The Department dispatched an employee to the ranch to investigate whether the calf had been killed by a trophy game animal.  The investigation was two-fold.  First, the employee examined the site where the dead calf was found, looking for signs of a struggle and animal tracks.  Next, he inspected the carcass for bite patterns and puncture marks indicating the calf was killed by a predator and for signs suggesting the calf was still alive when the injuries occurred such as bruising, muscle trauma, and hemorrhaging.  If the employee decided it was "more likely than not" that the calf was killed by a trophy game animal, the Department deemed it to be a "confirmed" kill. Regulations of Wyoming Game and Fish Commission (Commission Regulations), Ch. 28, *Regulation Governing Big or Trophy Game Animal or Game Bird or Gray Wolf Damage Claims*, §§ 2(h), 6(a)

1

(September 18, 2018). By the end of the 2018 grazing season, the Department "confirmed" twenty of Mr. Longwell's calves had been killed by grizzly bears in an open range setting.[1]

[¶5]    Mr. Longwell submitted a verified claim to the Department pursuant to Wyo. Stat. Ann. § 23-1-901(b) requesting the Department compensate him $349,730.20 for his calf damage. On his claim, he noted the twenty calves that had been "confirmed" by the Department to have been killed by grizzly bears. He also alleged an additional 294 calves were "unaccounted for at the end of the [grazing season]" and he "believed [them] to be missing as a result of" trophy game animals. (Emphasis removed). However, for purposes of calculating the amount of his claim against the Department, he multiplied the number of calves "confirmed" by the Department to have been killed by grizzly bears by 20 (20-times multiplier) for a total of 400 calves (20 x 20 = 400). He then multiplied that number by the calves' per-head fair market value. In other words, Mr. Longwell based his claim on an assumption that for every calf confirmed as killed by a grizzly bear, nineteen others had been killed and their remains could not be found.

[¶6]    The Department rejected Mr. Longwell's damage claim. It agreed it had "confirmed" twenty calves had been killed by grizzly bears and with Mr. Longwell's per-head valuation of the calves. It also found the twenty "confirmed" kills had occurred in an area on Mr. Longwell's ranch where it is difficult to find missing or dead calves. It disagreed, however, with Mr. Longwell's use of the 20-times multiplier because it was contrary to regulations established by the Wyoming Game and Fish Commission (Commission). Under those regulations, if the "confirmed" kills were located in a geographic area which made it difficult to find missing or dead calves and the landowner had at least one "confirmed" calf injured or killed by a trophy game animal, compensation is determined by multiplying the number of calves "confirmed" by the Department to have been killed by trophy game animals by 3.5 (3.5-times multiplier) and then by the calves' per-head fair market value. Commission Regulations, Ch. 28, § 3(a)(ii)(A)(I). The Department noted that by applying a 20-times multiplier, Mr. Longwell sought to be compensated for 400 calves, 86 more calves than the combined total of calves he claimed were missing (294 calves) and those "confirmed" by the Department to have been killed by grizzly bears (20 calves) (400 – (294 + 20) = 86). Applying the 3.5-times multiplier contained in the Commission's regulations, the Department agreed to compensate Mr. Longwell for the loss of 70 calves (20 x 3.5 = 70), totaling $61,202.79.

---

[1] The Department also confirmed two yearling steers and 117 sheep had been killed by grizzly bears or mountain lions. Mr. Longwell filed a verified claim for these losses. The Department agreed with the loss he claimed for the yearling steers but disagreed with his sheep damage calculation. The arbitrators awarded Mr. Longwell the amount agreed to for the yearling steers and decided the sheep damage in Mr. Longwell's favor. The Department did not seek to modify or vacate the arbitration award with respect to these damages. Neither the yearling steer damage nor the sheep damage is before us, and we confine our analysis to whether the district court erred in modifying the arbitrators' calf damage award.

[¶7]    Mr. Longwell appealed to the Commission, which affirmed the Department's decision.  He then requested arbitration under § 23-1-901(d).  He and the Department each appointed an elector of Hot Springs County to serve as an arbitrator.  The two arbitrators then chose another elector to serve as the third arbitrator.  The arbitrators held a contested case hearing presided over by a hearing officer from the Office of Administrative Hearings.

[¶8]    At the hearing, the parties agreed twenty calves had been "confirmed" by the Department to have been killed by a trophy game animal and that those calves were found in an area on the ranch with a topography making it difficult to locate dead or injured calves.  They also agreed to the per-head fair market value of the calves.  They disputed, however, the multiplier to be applied.  Mr. Longwell claimed the 3.5-times multiplier contained in the Commission's regulations was outdated and needed to be raised as it had not been changed since 2004.  He also argued the multiplier did not adequately account for the true number of calves he lost to trophy game animal predation or for the stress, weight loss, and lower conception and birth rates caused in his cattle from trying to evade such predators.  He recognized the arbitrators' application of the 20-times multiplier "might be thrown . . . [out] down the road [on appeal]."  However, he claimed "sending [the State] a bill" for the amount he requested would at least "wake up everybody in [the] legislature" and "send a message" to the State that "we need to revisit [the multiplier]" and stand up for private property owners like himself who are paying the price for the State's mismanagement of the grizzly bear.  The Department, on the other hand, argued the arbitrators were bound to apply the 3.5-times multiplier contained in the Commission's regulations.

[¶9]    In a 2 to 1 decision, the arbitrators awarded Mr. Longwell $266,685.32 for his calf damage.  In reaching this result, they did not apply any multiplier.  Rather, they compensated Mr. Longwell for 314 calves—the twenty calves "confirmed" by the Department to have been killed by grizzly bears and the additional 294 calves Mr. Longwell alleged in his verified claim were missing during the 2018 grazing season.

[¶10]  The Department filed an application with the district court to modify the arbitration award under § 1-36-115 of the Uniform Arbitration Act or, in the alternative, to vacate it under Wyo. Stat. Ann. § 1-36-114 (LexisNexis 2021) of the Act.  Mr. Longwell moved to confirm the award.  The district court noted the parties' agreement with the number of "confirmed" kills, the type of topography where those kills were located, and the calves' per-head fair market value.  Under these circumstances, the court concluded "there was little left for the arbitrators to do but apply [the 3.5-times] multiplier."  By not applying the 3.5-times multiplier and instead compensating Mr. Longwell for the twenty calves "confirmed" by the Department to have been killed by grizzly bears as well as for the 294 calves he alleged were missing as a result of trophy game animals, the court concluded "the arbitrators made an award on a matter not submitted to them" and modification of the arbitration award was required under § 1-36-115(a)(ii).  It modified the award to reflect the

3

amount Mr. Longwell would have received had the arbitrators applied the 3.5-times multiplier—$61,202.79 for the loss of seventy calves. Mr. Longwell timely appealed.

## STANDARD OF REVIEW

[¶11]

> We review de novo a district court's decision to confirm, vacate, or modify an arbitration award. When reviewing the district court's order after an arbitration, we undertake a full review of the record without deference to the views of the trial court. At the same time, this Court, like the district court, shows substantial deference to the decision of the arbitrator.

*Skaf v. Wyo. Cardiopulmonary Servs., P.C.*, 2021 WY 105, ¶ 34, 495 P.3d 887, 897 (Wyo. 2021) (quoting *Worman v. BP Am. Prod. Co.*, 2011 WY 54, ¶ 6, 248 P.3d 644, 646 (Wyo. 2011)) (other citation omitted). We also review de novo a district court's interpretation of a statute. *Williams v. Sundstrom*, 2016 WY 122, ¶ 19, 385 P.3d 789, 794 (Wyo. 2016) (citing *Clark v. State ex rel. Dep't of Workforce Servs.*, 2016 WY 89, ¶ 10, 378 P.3d 310, 313 (Wyo. 2016), and *DB v. State (In re CRA)*, 2016 WY 24, ¶ 15, 368 P.3d 294, 297 (Wyo. 2016)).

## DISCUSSION

[¶12] Mr. Longwell argues the district court erred in modifying the arbitration award because the arbitrators did not make an award upon an issue not submitted to them. According to him, the arbitrators were required under § 23-1-901 to quantify and value his calf damage, which they did by relying on the quantities of calves he identified on his verified claim and multiplying that number by the agreed upon per-head value. Mr. Longwell argues the Department did not contest he was missing the 294 calves, and, in fact, it confirmed at the arbitration hearing that it accepts "on its face" the number of missing calves reported by the landowner on the verified claim.

[¶13] Wyoming recognizes arbitration as a method of dispute resolution when the parties agree by contract to arbitrate or when a statute, like § 23-1-901, provides for arbitration. *See* Uniform Arbitration Act, §§ 1-36-101 to 1-36-119. In general, "'we are reluctant to disturb an arbitrator's just solution to a controversy, even if it differs from the resolution we might have chosen, had we been in the arbitrator's place.'" *Skaf*, ¶ 34, 495 P.3d at 898 (quoting *Worman*, ¶ 6, 248 P.3d at 646) (other citation omitted).

[¶14] That being said, "an arbitration award may be vacated by the court on one of five grounds stated in . . . § 1-36-114 . . . and modified or corrected by the court on one of three grounds set forth in . . . § 1-36-115 . . . ." *Dorr, Keller, Bentley & Pecha v. Dorr, Bentley*

4

*& Pecha*, 841 P.2d 811, 817-18 (Wyo. 1992) (footnotes omitted).  In this case, the district court modified the arbitration award under § 1-36-115(a)(ii), which states:

> (a) Upon application made within ninety (90) days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:
>
> . . .
> (ii) The arbitrators awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted[.][2]

[¶15]  We agree with the district court that the arbitrators awarded upon a matter not submitted to them.  The only issue before the arbitrators was whether they should apply the 3.5-times multiplier from the Commission's regulations or ignore the regulations and create their own multiplier (as Mr. Longwell did).  The arbitrators did not decide this issue, but instead made an award based on an entirely different approach, one contrary to that found in the regulations.

[¶16]  The general issue submitted to the arbitrators was determination of the amount the Department should pay to Mr. Longwell under the facts and the applicable law.  The applicable law includes the Commission's regulations, which state the Department "shall only offer payment for damage to individual livestock *confirmed by the Department or its representative as having been injured or killed by a trophy game animal . . . .*"  Commission Regulations, Ch. 28, § 3 (emphasis added).  Based on the regulations, the amount the Department owes for trophy game animal depredation is determined by multiplying the number of livestock "confirmed" by the Department to have been injured or killed by a trophy game animal by the per-head fair market value of the livestock.  *Id.*, §§ 2(gg), 3.  If the livestock were injured or killed in "geographic areas determined by the Department to have terrain, topography, and vegetative characteristics that influence the ability of the [landowner] and Department to find missing calves . . . that are believed to have been damaged as a result of a trophy game animal" and the rancher had at least one "confirmed" kill or injury, compensation is determined by multiplying the number of livestock confirmed by the Department to have been injured or killed by a trophy game animal by 3.5 and then by the per-head value of the livestock.  *Id.*, § 3(a)(ii)(A)(I).

[¶17]  Consequently, the issues for the arbitrators to determine could be (1) the number of livestock "confirmed" to have been killed or injured by trophy game animals, (2) the value per head of the livestock, and (3) whether the 3.5-times multiplier should be applied based on the terrain where the dead or injured livestock was found.  Here the parties agreed

---

[2] Mr. Longwell does not contend that correcting the arbitration award will affect the "merits of the decision upon the issues submitted."  Section 1-36-115(a)(ii).  We address only whether the district court correctly decided the arbitrators "awarded upon a matter not submitted to them."

twenty calves had been "confirmed" by the Department to have been killed by grizzly bears. They agreed on the value per head of the calves. They also agreed the dead calves were found in an open range setting where it is difficult to locate dead and missing calves, meaning that the multiplier should be applied. Because of the parties' stipulations, resolution of the only issue presented to the arbitrators required a simple mathematical calculation—multiply the number of "confirmed" kills by 3.5. Commission Regulations, Ch. 28, § 3(a)(ii)(A)(I). Mr. Longwell tried to present the arbitrators with the option of creating a new multiplier, but they had no authority to do that. *See infra Wyo. Game & Fish Comm'n v. Thornock*, 851 P.2d 1300, 1302 (Wyo. 1993). Perhaps recognizing that, the arbitrators *sua sponte* proceeded to recalculate the number of "confirmed" and compensatory kills. That issue was not presented to them.

[¶18] Mr. Longwell does not dispute the Department's interpretation of the Commission's regulations. Rather, he claims the arbitrators were not bound to follow the regulations. We disagree.

[¶19] In *Thornock*, the landowner submitted a claim under § 23-1-901 to the Department to be compensated for the costs he incurred in labor and materials for constructing a stack yard fence to keep elk from eating his hay crop. *Thornock*, 851 P.2d at 1302. The Department rejected his claim because such costs did not constitute damages caused by wildlife. *Id*. The Commission agreed with the Department. *Id*. at 1303. The arbitrators, however, awarded $850 to the landowner. *Id*. The Commission filed a petition to vacate the award under § 1-36-114(a)(iii), arguing the arbitrators exceeded their powers by awarding damages not allowed by the statute. *Id*. at 1303-04. The district court denied the petition, but we reversed. *Id*. at 1301, 1303. We concluded:

> The statutory language authorizing [the landowner's] claim[] states specifically that damage to property by wildlife will be compensated. It does not allude to the expenses of constructing a fence as a measure to avoid further damage. [The landowner] even concedes in his brief that "[a]lthough that statute . . . does not specifically empower the Commission to contract for fence construction, it does give the Commission broad and pervasive powers and authority to enter into contracts in which fence construction would ordinarily be a minor part * * *." We previously have alluded to the rule that when the language in a statute is plain and unambiguous, as it is here, those words are to be given the plain and ordinary meaning. *It is clear the arbitrators exceeded their authority when they compensated [the landowner] for the construction of the stack yard fence. That expense is not a claim for damage within the statute*.

*Id.* at 1305 (emphasis added).

6

[¶20] As we held in *Thornock*, arbitrators appointed under § 23-1-901 cannot award damages not allowed by law. Their role is to reach a decision within the confines of the law, and not to just reach any decision that seems attractive to them without regard to the law. The only difference between this case and *Thornock* is that the arbitrators awarded Mr. Longwell damages prohibited by the Commission's regulations, rather than the statute itself. That is a distinction without a difference. The regulations were adopted by the Commission pursuant to the statutory authority granted to it in § 23-1-901(c) and were properly promulgated under the Administrative Procedures Act. Wyo. Stat. Ann. § 23-1-303(e) (LexisNexis 2021) ("Rules and regulations of the [C]ommission and [D]epartment shall be promulgated in accordance with the provisions of the Wyoming Administrative Procedure Act."). They have the force and effect of law so long as they are consistent with § 23-1-901 and do not exceed the Commission's statutory authority. *State ex rel. Dep't of Rev. v. Buggy Bath Unlimited, Inc.*, 2001 WY 27, ¶ 19, 18 P.3d 1182, 1188 (Wyo. 2001) ("Rules adopted pursuant to statutory authority and properly promulgated have the force and effect of law. . . . However, rules promulgated in excess of an agency's statutory authority are null and void.") (citations omitted); *Matter of GAC*, 2017 WY 65, ¶ 22, 396 P.3d 411, 417 (Wyo. 2017) ("Like all administrative rules, the GAL Rules have the force and effect of law, so long as they are consistent with statute.") (citations omitted). Mr. Longwell does not claim the Commission exceeded its statutory authority by adopting the regulations. Nor is there any inconsistency between the statute and the regulations. Indeed, the statute is silent with respect to how to calculate the amount of compensation due a landowner whose property is damaged by a trophy game animal.

[¶21] Mr. Longwell argues the plain language of § 23-1-901 demonstrates the Commission's regulations do not apply to arbitration proceedings. He argues the legislature gave the Commission the authority to make rules in § 23-1-901(c), the subsection of the statute pertaining to the Department's and Commission's administrative review functions. Therefore, he maintains the legislature clearly intended the rules and regulations promulgated by the Commission under § 23-1-901(c) to apply only to the Department's and Commission's exercise of their administrative review functions. Similarly, Mr. Longwell contends § 23-1-901(d), (e), and (f), the subsections in the statute which govern the arbitration process, do not contain any language suggesting the arbitrators are bound to apply the Commission's regulations. Rather, he argues these statutory subsections reinforce the independent nature of the arbitration proceeding by (1) requiring the appointment of "disinterested" arbitrators from the county in which the damage occurred, (2) directing the arbitrators to "investigate" the claim, and (3) allowing the expenses of arbitration to be charged either to the landowner or to the Commission depending on if the arbitration award is greater or less than that awarded by the Department, thereby indicating the arbitrators have the authority to make damage awards different from those decided by the Department. Because there is no language in § 23-1-901 indicating the regulations apply to arbitration proceedings, Mr. Longwell claims the legislature did not intend to override the traditional independence of arbitrators. Indeed, he claims that if

the regulations governed the arbitrators, there would be a conflict of interest because the Department and Commission would have both the authority to pay and the power to decide what amount to pay.

> "In interpreting statutes, our task is to give effect to the legislature's intent. We look first to the plain meaning of the language chosen by the legislature and apply that meaning if the language is clear and unambiguous. "A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability." *RME Petroleum Co. v. Wyo. Dep't of Revenue*, 2007 WY 16, ¶ 25, 150 P.3d 673, 683 (Wyo. 2007). "All statutes must be construed in *pari materia*; and in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony." *State ex rel. Dep't of Revenue v. UPRC*, 2003 WY 54, ¶ 12, 67 P.3d 1176, 1182 (Wyo. 2003). *See also, Lance Oil & Gas Co. v. Wyo. Dep't of Revenue*, 2004 WY 156, ¶ 4, 101 P.3d 899, 902 (Wyo. 2004). If, however, the wording of a statute is ambiguous or capable of varying interpretations, we employ well-accepted rules of statutory construction. *Chevron [U.S.A., Inc. v. Dep't of Revenue*, 2007 WY 43], ¶ 10, 154 P.3d [331,] 334 [(Wyo. 2007)]."

*Bangs v. Schroth*, 2009 WY 20, ¶ 32, 201 P.3d 442, 456 (Wyo. 2009) (quoting *State Dep't of Corrs. v. Watts*, 2008 WY 19, ¶ 13, 177 P.3d 793, 796 (Wyo. 2008)). *See also, In re CRA*, 2016 WY 24, ¶ 16, 368 P.3d 294, 298 (Wyo. 2016) ("When interpreting a statute and its application, we first look at the plain language used by the legislature. . . . If the statute is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning." (citations omitted)).[3]

---

[3] Relying on our decision in *Parker Land & Cattle Co. v. Wyo. Game & Fish Comm'n*, 845 P.2d 1040, 1044, 1050 (Wyo. 1993), the Department maintains § 23-1-901 is a waiver of the State's sovereign immunity and must be "strictly construed against 'derogation of the [S]tate's sovereignty.'" However, *Parker*'s suggestion that § 23-1-901 constituted a waiver of the State's sovereign immunity garnered the agreement of only two justices. *Parker*, 845 P.2d at 1079-1080 (Thomas, J., and Cardine, J., concurring). The majority of the justices affirmed the Commission's denial of the landowner's damage claim because there was substantial evidence supporting the Commission's decision that the landowner had not established bison were the source of the brucellosis in his cattle. *Id.* at 1068, 1079-80. In any event, whether § 23-1-901 constitutes a waiver of the State's immunity or not is irrelevant because our standard rules of statutory construction apply. *Cf. Wyo. State Hosp. v. Romine*, 2021 WY 47, ¶ 15, 483 P.3d 840, 845 (Wyo. 2021) (the Wyoming Governmental Claims Act retains the State's sovereign immunity); *Watts*, ¶ 20, 177 P.3d at 798-99 ("We will use our standard rules of statutory construction to determine whether the legislature intended that immunity be waived for a particular claim [under the Wyoming Governmental Claims Act]

8

[¶22]  Section 23-1-901 states in relevant part:

>    (a) Any landowner . . . whose property is being damaged by any of the . . . trophy game animals . . . of this state shall, not later than fifteen (15) days after the damage is discovered by the [land]owner . . ., report the damage to the nearest game warden, damage control warden, supervisor or commission member.
>
>    (b) Any landowner . . . claiming damages from the state for injury or destruction of property by . . . trophy game animals . . . of this state shall present a verified claim for the damages to the [Department] not later than sixty (60) days after the damage or last item of damage is discovered. The claim shall specify the damage and amount claimed. As used in this subsection, "verified claim" means a claim which the claimant has signed and sworn to be accurate before a person authorized to administer oaths.
>
>    (c) The [D]epartment shall consider the claims based upon a description of the livestock . . . damaged or killed by a trophy game animal . . . . The [C]ommission is authorized to establish by rule, methods, factors and formulas to be used for determining the amount to compensate any landowner . . . for livestock damaged as a result of, missing as a result of, or killed by trophy game animals. Claims shall be investigated by the [D]epartment and rejected or allowed within ninety (90) days after submission, and paid in the amount determined to be due. In the event the [D]epartment fails to act within ninety (90) days, the claim, including interest based on local bank preferred rates, shall be deemed to have been allowed. No award shall be allowed to any landowner who has not permitted hunting on his property during authorized hunting seasons. Any person failing to comply with any provision of this section is barred from making any claim against the [D]epartment for damages. Any claimant aggrieved by the decision of the [D]epartment may appeal to the [C]ommission within thirty (30) days after receipt of the decision . . . as provided by rules of practice and procedure promulgated by the [C]ommission. The [C]ommission shall review the [D]epartment decision at its next meeting following receipt of

_____

and will not resort to reliance upon previous unsupported and unnecessary suggestions that the act is to be interpreted either liberally or strictly.").

notice of request for review. The [C]ommission shall review the investigative report of the [D]epartment, and it may approve, modify or reverse the decision of the [D]epartment.

(d) Within ninety (90) days after receiving notice of the decision of the [C]ommission, the claimant may in writing to the [D]epartment call for arbitration. Within fifteen (15) days after the [D]epartment receives the call for arbitration, the claimant and the [D]epartment shall each appoint a disinterested arbitrator who is an elector residing in the county where the damage occurred and notify each other of the appointment. Within twenty (20) days after their appointment, the two (2) arbitrators shall appoint a third arbitrator possessing the same qualifications . . . .

(e) At least twenty (20) days before the hearing, the board of arbitrators shall provide the claimant and department notice of the time and place in the county when and where the parties will be heard and the claim investigated and decided by the board. A written copy of the decision shall be promptly served upon each party. Within ten (10) days after receipt of the decision, either party may apply to the board for modification of the decision under W.S. 1-36-111. Either party may apply to the district court for vacation of a decision under W.S. 1-36-114(a) or correction or modification of a decision under W.S. 1-36-115 within thirty (30) days after receipt of the decision or within twenty (20) days after action by the board on an application for modification under W.S. 1-36-111.

(f) If no applications under subsection (e) of this section are made after receipt of the decision, the [C]ommission shall promptly pay the amount, if any, including interest based on local bank preferred rates, awarded by the board. Within thirty (30) days after the award is final, the board's reasonable service and expense charges shall be paid by:

(i) The claimant if the award is no greater than the amount originally authorized by the [C]ommission;

(ii) Otherwise, the [C]ommission.

[¶23] Section 23-1-901 is not ambiguous. It sets forth the procedures, including deadlines, a landowner must follow to be compensated for livestock damage caused by a trophy game animal. It also charges the Department with investigating and deciding a landowner's damage claim and gives an aggrieved landowner the right to seek review of the Department's decision with the Commission and, if still dissatisfied, before a board of three arbitrators. The statute does not, however, provide any guidance as to how the Department, Commission, and arbitrators are to determine the amount to compensate a landowner for

10

livestock damage caused by trophy game animal predation. The legislature filled this gap by authorizing the Commission to establish by rule the "methods, factors and formulas to be used" to determine the amount. Section 23-1-901(c). Importantly, nothing in this grant of rule-making authority indicates the rules adopted by the Commission are to apply only to the Department and the Commission. Reading the statute as a whole, the regulations adopted by the Commission apply at every level of review provided by the statute and must be followed by the Department, Commission, arbitrators, district court, and this Court. Had the legislature intended the Commission's rules and regulations to apply only to the Department and Commission in their administrative review of damage claims, it could have easily said so. The legislature did not, and we are not free to add such limitation to the statute. *WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit*, 2021 WY 61, ¶ 44, 486 P.3d 964, 976 (Wyo. 2021) ("court[s] may not add language to a statute under 'the guise of statutory interpretation'" (quoting *Delcon Partners LLC v. Wyo. Dep't of Revenue*, 2019 WY 106, ¶ 10, 450 P.3d 682, 685 (Wyo. 2019))).

[¶24] Mr. Longwell argues there would be no need for an arbitration proceeding if the arbitrators are bound to apply the Commission's regulations. In this case, as the district court observed, there was little fact-finding for the arbitrators to do with respect to Mr. Longwell's calf damage claim because the parties agreed on the salient facts. However, as the district court also recognized, in a different case there could be many factual issues for the arbitrators to resolve. For example, the parties may disagree as to the per-head value of the lost livestock. They may also disagree as to whether the topography where the "confirmed" kills were found is the type to which it would be difficult to locate missing or injured calves. Indeed, they did so in this case with respect to Mr. Longwell's sheep damage claim. The Department "confirmed" 117 of Mr. Longwell's sheep had been killed by grizzly bears or mountain lions. Mr. Longwell argued all of the sheep had been killed in an open range setting where locating missing sheep would be difficult and applied the 3.5-times multiplier to all of the 117 "confirmed" sheep kills. The Department, on the other hand, argued only some of the sheep were killed in an open range setting and the remainder were killed in a pasture-like setting. It maintained the 3.5-times multiplier applied only to those sheep found in the open range setting and Mr. Longwell should be paid 1:1 on those sheep found in the pasture-like setting. The arbitrators resolved this factual dispute in favor of Mr. Longwell.

[¶25] Mr. Longwell relies on *Smith v. Wyo. Game and Fish Comm'n*, 773 P.2d 941 (Wyo. 1989), for the proposition that arbitrators do not exceed their authority by exercising their independent judgment and not following the Department's determinations and the Commission's regulations. In *Smith*, the claimants asserted they were entitled to damages under § 23-1-901 for sheep they lost to mountain lions. *Id.* at 942. The Department agreed to only pay part of the damages requested, and the Commission offered to pay more than that offered by the Department but an amount substantially less than that sought by the claimants. *Id.* The arbitrators awarded the full amount of damages requested by the claimants. *Id.* at 943. The Commission filed a motion to vacate the arbitration award with

11

the district court under § 1-36-114(a)(iii), arguing the arbitrators exceeded their powers by awarding damages in excess of those allowed by law. *Id*. The district court denied the motion. *Id*. We affirmed because the record of the arbitration hearing had not been transcribed and the Commission had failed to prepare and submit a written statement of the proceedings as permitted by our appellate rules. *Id*. at 944 (citing W.R.A.P. 4.03, now codified at W.R.A.P. 3.03). "Without a transcript or a statement settling the record as to the hearing, we ha[d] nothing upon which to base a conclusion . . . that the arbitration board exceeded its powers . . ." and presumed "the evidence presented at the hearing supported the judgment of the [arbitrators] and warrants its affirmance." *Id*. Contrary to Mr. Longwell's argument, we did not hold in *Smith* that arbitrators do not exceed their powers by exercising their independent judgment and by not following the Department's determinations and Commission's regulations. We simply could not decide the issue on the record before us.

[¶26] We are sympathetic to Mr. Longwell's plight. His frustration with the grizzly bear predation occurring on his ranch is obvious from the transcript of the arbitration hearing. And, as the district court acknowledged, "it may very well be that the [3.5-times] multiplier [adopted by the Commission] is outdated and needs to be changed." However, as the court also recognized, Mr. Longwell's remedy lies with the Commission or the legislature, not this Court. *See, e.g., Fugle v. Sublette Cnty. Sch. Dist. No. 9*, 2015 WY 98, ¶ 21, 353 P.3d 732, 740 (Wyo. 2015) ("In the final analysis, Mr. Fugle's plea for a remedy is best made to the legislature for expansion of the exceptions [contained in the Wyoming Governmental Claims Act] or to the local governmental entity for [insurance] coverage. We are constrained by the language of the statute."); *Knowles v. Corkill*, 2002 WY 119, ¶ 29, 51 P.3d 859, 867 (Wyo. 2002) ("We continue to hold that damages for mental anguish—a person's emotional response to a wrongful death—are not compensable under Wyoming's Wrongful Death statute. It is the province of the legislature, not this Court, to expand the remedies available under the statute.").

## CONCLUSION

[¶27] The arbitrators were required to address the matters presented to them within the confines of the law, including the Commission's regulations. By directing that Mr. Longwell be compensated not only for those calves the parties agreed had been "confirmed" by the Department to have been killed by trophy game animals but also for those calves Mr. Longwell "believed" were missing as a result of trophy game animals, the arbitrators did not follow the law and decided an issue that was not presented to them. Because the arbitrators "made an award on a matter not submitted to them," we affirm the district court's modification of the arbitrators' award with respect to Mr. Longwell's calf damage claim.

12